**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**
CASE NO. _____

OUR ANDROS FISHERIES LTD.

    Plaintiff,

v.

ALL ISLAND MARINE SERVICES, LLC
and FREDERICK GATCHELL

    Defendants.
_____/

**<u>COMPLAINT</u>**

    Plaintiff, OUR ANDROS FISHERIES LTD. ("Andros" or "Plaintiff"), by and through its counsel, hereby file this Complaint against Defendants, ALL ISLAND MARINE SERVICES, LLC ("AIMS") and FREDERICK GATCHELL ("Gatchell"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.    Plaintiff Andros is a Bahamian limited liability company.  Its principal place of business is Nassau, Bahamas.

    2.    Defendant AIMS is a Florida limited liability company. Its principal place of business is Cape Canaveral, Florida.

    3.    Defendant Gatchell is an individual, over the age of 18 who resides in Cape Canaveral, Brevard County, Florida.

    4.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Compl.

5.     This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2) because the claims by Plaintiff, against AIMS and Gatchell, are between a citizen of a foreign state and the citizens of the state of Florida. For diversity purposes, a limited liability company, such as Andros and AIMS, is a citizen of every state where any of its members reside.  All the members of Andros reside in the Bahamas.   Specifically the members of Andros are Ken Smith and D'Angelo Smith, both reside in Nassau, Bahamas. On information and belief, all the members of AIMS reside in Florida. Consequently, there is complete diversity between Plaintiff Andros on one side and Defendants AIMS and Gatchell on the other.

6.     Gatchell appears as a manager of AIMS in the Florida's Division of Corporations per Sunbiz. On information and belief, Gatchell is the managing member of AIMS, runs and operates it.

7.     Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(2) as it is the judicial district in which a substantial part of the events or omission giving rise to Plaintiff's cause of action. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) as all the Defendants are residents of Florida and at least one Defendant resides in this district.

## NATURE OF THE ACTION

8.     This lawsuit stems from various orders placed by Plaintiff with Defendant Gatchell, in its capacity as a shipbroker to secure, purchase, retrofit and deliver three fishing vessels to Plaintiff, to use specifically for lobster fishing and their failure to properly comply with their contracts with Plaintiff to do so.  In one case, the contracted for vessel came damaged.  In two other instances, the contracted vessels were never delivered, apparently never existed, and the Defendants absconded with over $176,000 paid to

2

Compl.

them by Plaintiff, which monies Defendants were statutorily required to keep in trust for the purchase and repair of these vessels that they failed to purchase and deliver to Plaintiff.

## GENERAL ALLEGATIONS

9.      In or about October 2020, Plaintiff hired Gatchell and AIMS to fix up and deliver to it in the Bahamas, a fishing vessel that the Plaintiff had purchase through the services of a marine brokerage services out of Louisiana, name Ocean Marine Brokerage Services.  AIMS and Gatchell successful completed this contract with Plaintiff.

10.      Plaintiff thereafter contracted the services of Gatchell and AIMS to find, purchase, retrofit and deliver three (3) other marine vessels for Plaintiff.

## THE MARY ELIZABETH

11.      On or about January 13, 2022, the first of Plaintiff's orders resulted in a contract between Plaintiff and AIMS, whereby AIMS secured for the Plaintiff a 66.8 ft. trawler for $75,000, named the "Mary Elizabeth". The parties further agreed that AIMS would conduct a series of specific additional repairs and additions, and deliver the repaired vessel to the Bahamas for the additional sum of $68,000.00   A copy of the letter contract by AIMS to Plaintiff dated January 13, 2022, memorializing the above referenced terms (the "Mary Elizabeth Contract") is attached as **Exhibit A**.

12.      In an email exchange between Plaintiff and AIMS, on March 22, 2022, the parties modified the Mary Elizabeth Contract by reducing the total retrofitting allowance $8,000 to reflect some work that was not able to be done. This reduced the total amount of the Mary Elizabeth Contract from $143,000 to $135,000, and confirmed AIMS'

3

Compl.

obligation to deliver the Mary Elizabeth to Plaintiff in Nassau Bahamas. A copy of this March 22, 2022 email, is attached as **Exhibit B**.

13.    AIMS delivered the Mary Elizabeth to Plaintiff in Nassau Bahamas. However, in route to Nassau the prop of the Mary Elizabeth was lost requiring the repair and replacement of the vessel's shaft for a total in excess of $55,000.00.

14.    The prop of the Mary Elizabeth would not have been lost in transporting the Mary Elizabeth to Nassau, if AIMS had properly completed the refitting it was hired and paid for, such that AIMS is responsible for the monies that the Plaintiff has had to pay to repair the work that AIMS failed to properly do.

15.    The retrofitted Mary Elizabeth was supposed to be delivered to Plaintiff in the Bahamas, in time to catch the 2022 Bahamas lobster season that ran from August 2022 through March 2023.

**THE LADY RENNE**

16.    On or about March 23, 2022, the second of Plaintiff's orders resulted in a contract between Plaintiff and AIMS, whereby AIMS committed to secure for the Plaintiff a 45 ft. fiberglass trawler, located in Alabama, called the Lady Renee for $65,000. The parties further agreed that AIMS would conduct a series of specific additional repairs and additions and deliver the repaired vessel to the Bahamas for the additional sum of $31,000.00    A copy of the letter contract by AIMS to Plaintiff dated March 23, 2022, memorializing the above referenced terms (the "Lady Renee Contract") is attached as **Exhibit C**.[1]

---

[1] The retrofit allowance in the Lady Renee Contract states it is for $32,000.00 as opposed to $31,000. However, the $32,000 amount is the result of incorrect math. Adding the

4

Compl.

17.     On or about March 22, 2022, AIMS sent its invoice number 1753 to Plaintiff, for the balance due AIMS of the $65,000 purchase price for the Lady Renee, VIN number 985030, that it had committed to purchase for the Plaintiff. That balance, per the invoice, was for $58,500.00.  A copy of this invoice ("AIMS Lady Renee Invoice") is attached as **Exhibit D**.

18.     The AIMS Lady Renee invoice makes clear that the monies sent by Plaintiff to AIMS for the purchase of the Lady Renee are to be placed in an escrow account at PNC Bank.

19.     Plaintiff delivered the purchase price to AIMS for the purchase of Lady Renee at least as of April 25, 2022.

20.     Plaintiff completed the payment of the $31,000 for the refitting of the Lady Renee at least as of June 2022.

21.     The retrofitted Lady Renee was supposed to be delivered to Plaintiff in the Bahamas, in time to catch the 2022 Bahamas lobster season that ran from August 2022 through March 2023.

22.     From August 2022 through January 2023, AIMS and Gatchell informed Plaintiff that AIMS was working diligently on retrofitting the Lady Renee for delivery to Plaintiff in the Bahamas.

23.     In or about mid-January 2023, with the delivery of the Lady Renee long overdo and AIMS being non-responsive as to the status and delivery of it to Plaintiff, Plaintiff sent an representative to visit AIMS in Florida to inspect the Lady Renee.

---

individual totals of the retrofitting to be done, as set out in the Lady Renee Contract, adds up to $31,000, not $32,000.

5

Compl.

However, when this representative went to inspect the Lady Renee, the vessel that he was shown was not the Lady Renee, it was not anything like what the Lady Renee was supposed to be nor was it a vessel that was otherwise purchased by AIMS for Plaintiff.

24.    On information and belief, a 45-foot trawler named the Lady Renee with VIN number 985030, does not exist. A review of the U.S. Coast Guard ("USCG") documented vessels in the state of Alabama, show that the only vessel with the name "Lady Renee", with VIN number 985030, is a 38-foot passenger vessel.  A copy of the USCG Maritime Information Exchange for the Lady Renee in the state of Alabama, is attached as **Exhibit E**.

25.    Plaintiff has continually demanded that AIMS deliver to it in the Bahamas, as promised, the refitted Lady Renee 45 ft. trawler it bought, but to date, AIMS has failed to do so.

## THE HAPPY SNAPPER

26.    On or about March 23, 2022, simultaneously with the Plaintiff's contracting with AIMS for the Lady Renee Contract, the Plaintiff's third order for a lobster fishing vessel, resulted in a contract between Plaintiff and AIMS whereby AIMS committed to secured for Plaintiff another 45-foot fiberglass trawler located in Alabama,  called the Happy Snapper for $48,000. The parties further agreed that AIMS would conduct a series of specific additional repairs and additions and deliver the repaired vessel to the Bahamas, for the additional sum of $32,000.00   A copy of the letter contract by AIMS to

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909  FAX: 305.735.6469

Compl.

Plaintiff dated March 23, 2022, memorializing the above referenced terms (the "Happy Snapper Contract") is attached as **Exhibit F**.[2]

27.    On or about March 23, 2022 AIMS sent its invoice number 1752 to Plaintiff for the balance due AIMS of the $48,000 purchase price for the Happy Snapper, VIN number 527508, that it had committed to purchase for the Plaintiff. That balance was for $43,500.00 per the invoice.  A copy of this invoice ("AIMS Happy Snapper Invoice") is attached as **Exhibit G**.

28.    The AIMS Happy Snapper Invoice makes clear that the monies sent by Plaintiff to AIMS for the purchase of the Happy Snapper are to be placed in an escrow account at PNC Bank.

29.    Plaintiff delivered the purchase price to AIMS for the purchase of the Happy Snapper, at least as of August 2022.

30.    Plaintiff completed the delivery of the agreed upon $31,000 for the refitting of the Happy Snapper at least as of December 2022.

31.    The refitted Lady Renee was supposed to be delivered to Plaintiff in the Bahamas as of mid November 2022, in time to catch a significant portion of the 2022 Bahamas lobster season that ran from August 2022 through March 2023.

32.    From August 2022 through January 2023, AIMS and Gatchell informed Plaintiff that AIMS was working diligently on retrofitting the Happy Snapper in Alabama for delivery to Plaintiff in the Bahamas.

---

[2] The retrofit allowance in the Happy Snapper Contract states it is for $33,000.00 as opposed to $32,000. However, the $33,000 amount is the result of incorrect math. Adding the individual totals of the retrofitting to be done as set out in the Lady Renee Contract adds up to $32,000, not $33,000.

7

Compl.

33.    In or about mid-January 2023, AIMS notified Plaintiff that the retrofitting of the Happy Snapper was being delayed in Alabama and that it would take an additional 4 to 6 weeks to complete the retrofitting and proceed with the delivery of this vessel to Plaintiff in the Bahamas.

34.    Despite frequent calls and communications to AIMS, regarding the status of the delivery of the refitted Happy Snapper to Plaintiff in the Bahamas, the next notification the Plaintiff received from Defendants was a letter dated April 7, 2023. This letter notified Plaintiff that on March 30, 2023, while presumably transporting the vessel from Alabama to Florida, the Happy Snapper was the victim of a nighttime hit and run accident that demolished the vessel and caused injury to the crew. Defendants further informed Plaintiff that the incident was reported to the USCG and that Defendant was required to clean up the wreckage and the fuel costing them thousands of dollars.   A copy of Defendants April 7, 2023 letter is attached as **Exhibit H**.

35.    On information and belief, a 45-foot trawler named the Happy Snapper with VIN number 527508, does not exist. A review of the USCG's documented vessels in the state of Alabama show that neither of the three vessels with the name "Happy Snapper" in Alabama is the 45 ft. fiberglass trawler, as described in the Happy Snapper Contract. Rather, one of the Happy Snapper vessels in Alabama is a 38-foot passenger vessel (this is the one with VIN number 527508).  Another is recreational vessel, with VIN number 948050.  The third one, is a 29.9-foot fishing vessel as opposed to a 45 (with VIN number 569047). Copies of the USCG Maritime Information Exchange for the three Happy Snapper vessels in the state of Alabama are attached as **Composite Exhibit I**.

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131    Tel: 305.377.0909  Fax: 305.735.6469

36.     Moreover, on information and belief, the hit and run incident with the Happy Snapper described by the Defendants that allegedly occurred on March 30, 2023, as set forth in Defendants April 7, 2023 letter attached as **Exhibit H**, <u>never happened</u>. Plaintiff states this because a review by Plaintiff of the USCG's portal of Incident Investigation Reports has no records or incident reports for Happy Snapper.  A screen shoot of the USCG's Maritime Information Exchange for Incident Investigation Reports is below and show no incident reports for Happy Snapper from April 14, 2018 throughout April 14, 2023..



37.     Moreover, a review of USCG Incident Investigation Reports, during the period of March 27 through April 11, 2023, shows 4 incidents, none of which is related to Happy Snapper.  A screenshot of this search results is immediately below:

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.



38.    Plaintiff has repeatedly demand that Defendants deliver the refitted Happy Snapper to Plaintiff in the Bahamas but Plaintiff has not done so and now, pursuant to its April 7, 2023 letter, will not be able to do so.

39.     Plaintiff has employed the De la Peña Group, P.A. for its representation in this action and has agreed to pay reasonable attorneys' fees.

40.    All conditions precedent to the filing of this action have been performed have been satisfied or have been waived.

**COUNT 1**
**AGAINST AIMS**
**BREACH OF THE MARY ELIZABETH CONTRACT**

41.    Plaintiff realleges the allegations contained in paragraphs 1 through 15 and incorporates them herein by reference.

42.    Pursuant to the terms of the Mary Elizabeth Contract, as explained in paragraphs 1 through 16, AIMS was to purchase the vessel known as the Mary Elizabeth,

10

Compl.

retrofitted it as agreed to with Plaintiff and thereafter deliver the retrofitted vessel to Plaintiff in the Bahamas.

43.    Plaintiff carried out its end of the bargain as it paid AIMS the amounts in exchange for AIMS services agreed to by these parties.

44.    Defendant AIMS breach this contract because Defendant failed to properly and professionally retrofit the vessel as agreed. This is because the prop of the Mary Elizabeth was lost in route of its delivery to the Bahamas such that the Mary Elizabeth was not delivered as specified to the Plaintiff as a functioning vessel in the Bahamas.

45.    Moreover, Plaintiff had arrange for the rescue and towing of the Mary Elizabeth at sea and thereafter had take it to dry dock in the Bahamas, where it currently remains and has to date undergone more than $55,000 dollars in repairs.

46.    Plaintiff has been damage by AIMS breach of the Mary Elizabeth.  That is because rather than getting the functioning retooled lobster fishing vessel that it could have used in its business during lobster season as foreseen by the Parties, Plaintiff has been without the use this vessel, in addition to incurring the cost of transporting and repairing it in amounts that currently exceed $55,000.

**WHEREFORE**, Plaintiff demands damages for this Count of the Complaint in the minimum amount of $55,000 for Plaintiff's actual costs of repairs, together with its consequential and incidental damages, including the lost profits it would have made had it had the Mary Elizabeth available for use in its lobster business as of 2022, together with prejudgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 2**
**AGAINST AIMS**
**BREACH OF THE LADY RENNE CONTRACT**

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909   FAX: 305.735.6469

Compl.

47.     Plaintiff  Andros realleges the allegations contained in paragraphs 1 through 10 and 16 through 25 and incorporates them herein by reference.

48.     Pursuant to the terms of the Lady Renee Contract as explained in paragraphs 1 through 11 and 17 through 25, AIMS was to purchase the vessel described and identified in this contract as the Lady Renne vessel with VIN number 985030, retrofitted it as agreed to with Plaintiff and thereafter, deliver this retrofitted vessel to Plaintiff in the Bahamas.

49.     Plaintiff carried out its end of the bargain for this contract as it paid AIMS the amounts in exchange for AIMS services agreed to by these parties.

50.     Defendant AIMS breach this contract because, to date, Defendant has failed to purchase the promised vessel on the Plaintiff's behalf, let alone retrofit and deliver it to Plaintiff in the Bahamas as required by this contract. Moreover, the time within which AIMS could reasonably do so has long since passed.

51.     Plaintiff has been damaged by AIMS' breach of the Lady Renne Contract because it paid AIMS over $96,000.00 dollars for the refitted Lady Renee as described in the Lady Renee Contract and has instead secured nothing in return.

52.     In addition to the loss of the monies paid to AIMS for the failure to deliver the refitted Lady Renee vessel as promised, Plaintiff has also sustained the consequential damages of not having this vessel available to it for use in its lobster fishing business at least during a significant portion of the 2022 lobster fishing season.

**WHEREFORE**, Plaintiff demands damages for this Count of the Complaint in the minimum amount of the $96,000 it paid for a refitted vessel it never received. Plaintiff also seeks its consequential and incidental damages, including the lost profits it would have

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131    Tel: 305.377.0909   Fax: 305.735.6469

Compl.

made had it had the Lady Renee available for use in its lobster business as of least January 2023, together with prejudgment interest, costs, and such other relief this Court deems just and proper.

### COUNT 3
### AGAINST AIMS
### BREACH OF THE HAPPY SNAPPER CONTRACT

53.    Plaintiff Andros realleges the allegations contained in paragraphs 1 through 10 and 26 through 40 and incorporates them herein by reference.

54.    Pursuant to the terms of the Happy Snapper Contract, as explained in paragraphs 1 through 10 and 26 through 40, AIMS was to purchase the vessel described and identified in this contract as the Happy Snapper vessel, VIN number 527508, retrofitted it as agreed to with Plaintiff and thereafter deliver this retrofitted vessel to Plaintiff in the Bahamas.

55.    Plaintiff carried out its end of the bargain for this contract as it paid AIMS the amounts in exchange for AIMS services agreed to by these parties.

56.    Defendant AIMS breach this contract because, to date, Defendant has, on information and belief, failed to purchase the promised vessel on the Plaintiff's behalf. Moreover, Plaintiff has certainly failed to retrofit it as agreed to by the parties and deliver it to Plaintiff in the Bahamas as required by the contract. Moreover, according to AIMS, the promised vessel has been destroyed while in AIMS's custody such that there is no possibility that AIMS will be able to complete this contract.

57.    Plaintiff has been damaged by AIMS' breach of the Happy Snapper Contract because it paid AIMS over $80,000.00 dollars for the refitted Happy Snapper

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909  FAX: 305.735.6469

Compl.

vessel, as described in the Happy Snapper Contract, and has instead secured nothing in return.

58.    In addition to the loss of the monies paid to AIMS for the failure to deliver the refitted Happy Snapper vessel as promised, Plaintiff has also sustained the consequential damages of not having this vessel available to it for use in its lobster fishing business at least during a significant portion of the 2022 lobster fishing season.

**WHEREFORE**, Plaintiff demands damages for this Count of the Complaint in the minimum amount of the $80,000 it paid for a refitted vessel it never received. Plaintiff also seeks its consequential and incidental damages, including the lost profits it would have made had it had the Happy Snapper available for use in its lobster business as of least March of 2023, together with prejudgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 4**
**AGAINST BOTH DEFENDANTS**
**FRAUD IN THE INDUCEMENTFOR THE LADY RENEE AND HAPPY SNAPPER CONTRACTS**

59.    Plaintiff  Andros realleges the allegations contained in paragraphs 1 through 10 and 16 through 40 and incorporates then herein by reference.

60.    This is a claim for fraud in the inducement against both Defendants for snookering the Plaintiff to enter in the Lady Renee and Happy Snapper Contracts and pay Defendants $176,000, when they knew that the vessels they were representing to the Plaintiff that they would purchase, refit and deliver to Plaintiff in the Bahamas did not exist and that they never had any intention of completing these contracts.

61.    On information and belief, for the reasons described in paragraphs 24 and 35, Defendant's representations about the existences of the Lady Renee and Happy

14

Compl.

Snapper vessels, as described by the Defendant in the Lady Renee and Happy Snapper Contracts, were false statement of material facts, known by the Defendants to be false when made and made with the intention that Plaintiff rely on these statement to execute and fund the Lady Renee and Happy Snapper Contracts.

62.     Defendants follow up statements in these contracts that Defendants would thereafter refit and deliver the refitted vessels to the Plaintiff in the Bahamas were also knowingly false statement made with the intention that Plaintiff rely on them to enter and fund these two contracts with Defendant AIMS.

63.     The statement contained in Defendant AIMS' invoice that the monies paid to it by Plaintiff for the purchase of the two vessels, as described in paragraphs 18 and 28, were also materially false because on information and belief, this Defendant never intended to keep these monies in escrow to purchase the subject vessels as represented by these invoices. Moreover, these were also knowingly false statement made with the intention that Plaintiff rely on them to enter and fund these two contracts with Defendant AIMS.

64.     Defendant Gatchell made these statements to the Plaintiff, both in the scope and course of his employment with Defendant AIMS but also in his individual capacity.

65.     Plaintiff was damage by its reliance on the fraudulent misrepresentation described above to enter and fund the Lady Renee and Happy Snapper Contracts, for which it paid approximately $176,000 dollars and received absolutely nothing in returned.

**WHEREFORE**, Plaintiff seeks damages against both Defendants for fraud in the inducement, including rescission of these two contracts, the return of all the monies paid

15

Compl.

on these contracts, together with prejudgment interest, and any other relief this Court

finds just and appropriate.

**COUNT 5**
**AGAINST BOTH DEFENDANTS**
**CONVERSION FOR THAT PORTION OF PLAINTIFF'S PAYMENT**
**PURSUANT TO THE LADY RENEE AND HAPPY SNAPPER CONTRACTS,**
**THAT WERE SUPPOSED TO BE KEPT IN ESCROW BUT WERE NOT.**

66.    Plaintiff Andros realleges the allegations contained in paragraphs 1 through

10, 16 through 19, 23 through 29 and 35 through 38 and incorporates them herein by

reference.

67.    As set forth in paragraphs 18 and 28, the invoices that accompanied both

the Lady Renee and Happy Snapper Contracts, the monies that the Defendant AIMS

received from Plaintiff to purchase the Lady Renee and Happy Snapper vessels were

required to be placed into AIMS's escrow account and used only for the purchase of these

two vessels for Plaintiff.  Absent their use in such an endeavor, these funds were required

to be returned to Plaintiff.

68.    The Defendant's obligation to maintain and operate such an escrow account

originates and is mandated by Florida statute given the Defendants status as a Yacht and

Ship Broker, pursuant to Florida Statute § 326.002.

69.    The Yacht and Ship Broker's Act set forth certain procedures involving

escrow deposits and closing transactions. Florida Statute § 326.005 provides that a

broker covered under the act shall place any funds received pursuant to a transaction, as

happened here, in a trust account.  Also, that the broker will provide the buyer (here

Plaintiff) with an itemized closing statement and a valid certificate of title showing a proper

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909  FAX: 305.735.6469

Compl.

transfer of title to it as the purchaser of the vessel. **The failure to do any of the above is actually a crime, a felony in the third degree**.

70.     Defendants AIMS and Gatchell did not comply with their obligations to Plaintiff under the Yacht and Ship Broker's Act related to their obligations to keep Plaintiff's funds in escrow.

71.     On information and belief, Defendants absconded with Plaintiff's monies that they were legally required to keep escrowed.

72.     The theft of escrowed monies is a conversion under Florida law.

73.     On information and belief, Defendant Gatchell embezzled Plaintiff's escrow funds under both contracts for his own purposes.

**WHEREFORE**, Plaintiff demands damages for conversion as to all the escrowed monies in the minimum amount of $113,000.00, taken by the Defendant that was meant for the purchase of the two vessels for Plaintiff but were instead embezzled by Defendant together with prejudgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 6**
**AGAINST DEFENDANT AIMS**
**UNJUST ENRICHMENT AS TO BOTH THE MONIES PAID OUT TO IT PURSUANT TO THE LADY RENEE AND HAPPY SNAPPER CONTRACTS**

74.     This is an action for unjust enrichment brought by Plaintiff against AIMS.

75.     Plaintiff Andros realleges the allegations contained in paragraphs 1 through 16 and incorporates them herein by reference.

76.     Plaintiff has conferred a benefit upon AIMS. Specifically, he has paid AIMS $176,000 for the purchase and refitting of the Lady Renee and Happy Snapper vessels.

77.     AIMS has knowledge that Plaintiff has conferred that benefit upon AIMS.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

78.     AIMS has voluntarily accepted and retained such benefits without paying for them.

79.     The circumstances are such that it would be inequitable for AIMS to retain the benefits conferred upon it without paying for them.

**WHEREFORE**, Plaintiff respectfully demands judgment against AIMS for any and all damages, interest, costs, and for such further relief as this Court deems just and equitable.

**COUNT 7**
**AGAINST BOTH DEFENDANTS**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

80.     Plaintiff Andros realleges the allegations contained in paragraphs 1 through 10, 16 through 38, and  incorporates them herein by reference.

81.     This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*, seeking damages, injunctive relief, and reasonable attorney's fees and costs.

82.     FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." FLA. STAT. § 501.204(a).

83.     At all times material hereto, the Defendant engaged in "trade or commerce", as that term is defined by FLA. STAT. § 501.203(8).

84.     The Florida Legislature has stated that FDUTPA "shall be construed liberally to promote" its underlying policies, including "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

85.     FDUTPA specifically provides that a violation of FDUTPA may be based on a violation of "[a]ny law, statute, rule, regulation, or ordinance, which prescribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." FLA. STAT. § 501.203(3)(c).

86.     FDUTPA further provides that relief sought under FDUTPA may be in addition to "any other remedy or relief which a person is entitled". FLA. STAT. § 501.211(1).

87.     Defendants conduct was unlawful, unconscionable, deceptive, unfair, and misleading in violation of FDUTPA. Among other things, Defendants committed an unlawful act or practice as defined in FLA. STAT. § 50 1.204(1), by engaging in unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade or commerce where:

  a. Defendants, AIMS and Gatchell, claim to have purchased 2 vessels, Lady Renee and Happy Snapper;

  b. Defendants did not provide a bill of sale following the alleged purchase of Lady Renee and Happy Snapper;

  c. Defendants failed to return Plaintiff's monies despite being informed that Plaintiff wanted a refund.

  d. Defendants refused to provide valid certificates of title pertaining to the alleged purchases of Lady Renee and Happy Snapper.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

    e.  Defendants has not produce any records showing AIMS placed Plaintiff's funds in a trust account and maintained a separate record of all such moneys received and the disposition thereof.

    f.  Defendants has not provide Plaintiff with an itemized closing statement, detailing the selling price, all charges and credits. a description of the selling price, and the amount of consideration.

88.    In essence, Defendants claim to have purchased 2 vessels without a contract, signed bill of sale, or any other writing authorizing said purchase, and then refused to provide an itemized bill of sale or certificate of title evidencing the transaction. Additionally, Defendants refused to provide escrow records evidencing the alleged, unauthorized transaction.

89.    Based on the foregoing, it appears to be the case that Defendants never purchased Lady Renee and Happy Snapper, or did not purchase it with Plaintiff's funds. On information and belief: Defendants have violated Fla. Stat. § 326.006(2)(e) by making continued misrepresentations concerning the alleged purchases of Lady Renee and Happy Snapper in contravention of Fla. Stat. § 326.006(2)(e)3; by commingling Plaintiff's funds "with his own in contravention of Fla. Stat. § 326.006(2)(e)5; and by committing fraud or dishonest acts in the conduct of any transaction involving a yacht in contravention of Fla. Stat. § 326.006(2)(e)6.

90.    These violations entitle Plaintiff to relief under Fla. Stat. § 501.203(3)(c), which provides that a violation of FDUTPA may be based on a violation of "[a]ny law, statute, rule, regulation, or ordinance which prescribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131    Tel: 305.377.0909  Fax: 305.735.6469

Compl.

91.     As alleged herein, Defendant has violated FDUTPA, is currently violating FDUTPA, and is likely to continue to violate FDUTPA in the future.

92.     Plaintiff has suffered actual damages and has otherwise been aggrieved as a direct and proximate result of the Defendant's violations of FDUTPA.

93.     Plaintiff is entitled to recover her actual damages caused by Defendant's FDUPTA violations, plus attorney's fees and court costs. FLA. STAT. §§ 501.211(2) and 501.2105.

94.     Plaintiff is also entitled to a declaratory ruling that the Defendant's conduct, as alleged herein, has violated FDUPTA. FLA. STAT. § 501.211(1).

**WHEREFORE**, Plaintiff respectfully prays for entry of a judgment for damages in its favor and against the Defendants according to proof at the time of trial or entry of judgment, declare that Defendants' conduct has violated FDUTPA, award Plaintiff the return of its funds, award Plaintiff its costs of suit as incurred in this action, plus attorney's fees, interest and any other and further relief as this Honorable Court may deem just and proper.

## COUNT 7
## AGAINST BOTH DEFENDANTS
## BREACH OF THE YACHT AND SHIP BROKERS ACT

95.     Plaintiff Andros realleges the allegations contained in paragraphs 1 through 10, and 16 through 38, and incorporates them herein by reference.

96.     This is an action for violations of the Yacht and Ship Brokers Act, FLA. STAT. §§ 326.001 *et seq.*

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

97.    The Defendants, AMSI and Gatchell, are a "broker" as that term is defined

by FLA. STAT. § 326.002.

98.    The vessels, Lady Renee and Happy Snapper, are a "yacht" as that term is

defined by FLA. STAT. § 326.002.

99.    Section 326.004(11) provides that:

"Any person injured by the fraud, deceit, or willful negligence of any broker
or salesperson or by the failure of any broker or salesperson to comply with
the Yacht and Ship Broker's Act or other law may file an action for damages
upon the respect bonds against the principals and surety."

100.   The Yacht and Ship Broker's Act sets forth certain procedures involving

escrow deposits and closing transactions. Florida Statute § 326.005 provides as follows:

"(1) A broker shall place any funds received pursuant to a transaction into
a trust account in a savings and loan association, bank, trust company, or
other financial institution located in this state having a net worth in excess
of $5 million until he or she disburses such funds. A separate record shall
be maintained of all such moneys received and the disposition thereof.
(2) At the closing of a transaction in which title to a yacht is transferred, a
broker shall provide the seller and purchaser with an itemized dosing
statement, including the selling price and all charges and credits, a
description of any yachts exchanged and the amount of any consideration.
If the transaction is closed through escrow and the escrow holder renders
a closing statement which reveals such information, that shall be deemed
compliance with this subsection on the part of the licensed broker.
(3) A broker who intentionally fails to comply with the provisions of this
section concerning the establishment of a trust account, deposits of funds
into a trust account, and withdrawal therefrom, commits a felony of the third
degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The failure to establish a trust account or to place funds therein as required
in this section is prima facie evidence of an intentional and purposeful
violation of this section."

101.   Florida law mandates that a valid certificate of title be delivered pursuant to

any transfer of title by providing that, "A person shall not sell, assign, or transfer a vessel

titled by the state without delivering to the purchaser or transferee a valid certificate of

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

title with an assignment on it showing the transfer of title to the purchaser or transferee." FLA. STAT. § 328.03(3).

102.    Defendants' conduct violates the Yacht and Ship Broker's Act and other cognate Florida law in the following manner:

a. Contrary to FLA. STAT. § 328.03(3), Defendants failed to provide certificates of title related to the purchases of Lady Renee and Happy Snapper.

b. Contrary to FLA. STAT. § 326.005(1), Plaintiff avers that its funds were not properly maintained in a trust account with a separate record showing the funds received and the disposition thereof.

c. Contrary to FLA. STAT. § 326.005(2), Defendants never provided Plaintiff with an itemized closing statement detailing the selling price, all charges and credits, and the amount of consideration in relation to the alleged purchase of Lady Renee and Happy Snapper.

48. Defendants' actions, constituting fraud, deceit, and/or willful negligence, have injured Plaintiff who paid $176,000 into AIMS's escrow account and never received a vessel or a return of its funds.

**WHEREFORE**, Plaintiff respectfully prays for entry of a judgment for damages directing Defendants surety to pay Plaintiff the $25,000 secured by Defendants' surety bond or letter of credit created pursuant to FLA. STAT. § 236.004, and for any other and further relief as this Honorable Court may deem appropriate.

Dated: April 26, 2023            Respectfully submitted,

DE LA PEÑA GROUP, P.A.
*Attorneys for Plaintiff*

23

Compl.

701 Brickell Avenue, 15th Floor
Miami, FL  33131
Tel:  305.377.0909
Fax: 305.735.6469
E-mail: service@dlp-law.com
              paralegal@dlp-law.com

BY:   s/ Leoncio E. de la Peña D.
            Leoncio E. de la Peña D., Esq.
            Florida Bar No. 454508
            Tracy Pérez, Esq.
            Florida Bar No. 860441

24