## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### ORLANDO DIVISION
CASE NO. 6:23-cv-00759-PGB-LHP

OUR ANDROS FISHERIES LTD.

    Plaintiff,

v.

ALL ISLAND MARINE SERVICES, LLC
and FREDERICK GATCHELL

    Defendants.

_____/

### **PLAINTIFF'S RENEWED MOTION FOR  DEFAULT FINAL JUDGMENT**

Plaintiff, OUR ANDROS FISHERIES LTD. ("Andros"), by and through counsel and pursuant to Federal Rule of Civil Procedure 55(b)(2), Local Rule 1.10(c) and this Court's Order dated October 11, 2023 [D.E.16], hereby moves this Court to enter a Default Final Judgment against Defendants, ALL ISLAND MARINE SERVICES, LLC ("AIMS") and FREDERICK GATCHELL ("Gatchell") for the reasons and in the amounts set forth below.

### I.      FACTUAL BACKGROUND

Defendants are shipbrokers under Florida's Yacht and Ship Broker's Act, Fla. Stat. § 326.001 *et seq.* Plaintiff runs a lobstering operation in the Bahamas. This lawsuit stems from various orders placed by Plaintiff with Defendant Gatchell, as the principal of Defendant AIMS to secure, purchase, retrofit, and deliver three fishing vessels to Plaintiff specifically for lobster fishing and Defendant AIMS' failure to do so.  In one case, the contracted vessel came damaged and could not be used.  In two other instances, the contracted vessels were never delivered, apparently never existed, and Defendants

absconded with over $176,000 paid to AIMS by Plaintiff in trust for the purchase and retooling of these two vessels that were never purchased and delivered to Plaintiff.

The first contract between the Plaintiff and the Defendant AIMS was in January 2022, for the purchase, refitting and delivery of the vessel named the "Mary Elizabeth" that Defendant AIMS had scouted out for the Plaintiff.  Defendant AIMS was to deliver the refitted Mary Elizabeth to the Plaintiff at Nassau, Bahamas in time for the Plaintiff to use the ship during the Bahamas 2022 Lobster Season that ran from August 2022 through March 2023.  The cost of the contract to Plaintiff was $135,000.

Defendant AIMS failed to deliver the Mary Elizabeth in working order to the Plaintiff in Nassau because on or about June 27, 2022, the Mary Elizabeth lost its prop en route to Nassau and had to be rescued at sea by Plaintiff and towed to Nassau, where Plaintiff had to repair it at a combined cost of $123,537.71.  In addition to this repair cost and the cost of towing the Mary Elizabeth to Nassau, Plaintiff lost the ability to use the Mary Elizabeth during the 2022 Bahamas Lobster Season and sustained lost profits in the amount of $310,000, as explained in the Declarations of Ken Smith, Plaintiff's managing principal and Mr. Shawn Smith, Plaintiff's certified outside accountant for which Plaintiff seeks damages from Defendant AIMS. The Declaration of Ken Smith is attached as **Exhibit 1**. The Declaration of Shawn Smith is attached as **Exhibit 2**.

 Next, in March of 2022, Plaintiff entered into two additional contracts with AIMS for AIMS to find, secure, purchase and retrofit fishing vessels again for delivery to Plaintiff in the Bahamas in time for the Plaintiff to use them in its lobstering operation during the Bahamas' 2022 Lobster Season.  One such contract was for a 45-foot fiberglass trawler named the Lady Renee. The other was for another 45-foot fiberglass trawler named the

2

Happy Snapper.  Both the Lady Renee and the Happy Snapper were represented to be in Alabama.

Plaintiff paid Defendant AIMS $96,000.00 for the Lady Renee but Defendant AIMS did not deliver the Lady Renee to Plaintiff and kept the $96,000 that Plaintiff paid it. Similarly, Plaintiff paid Defendant AIMS $80,000.00 for the Happy Snapper, but Defendant AIMS did not deliver the Happy Snapper to Plaintiff and kept the $80,000 that Plaintiff paid to it.

Subsequent to Defendant AIMS' failure to deliver the Lady Renee and the Happy Snapper to Plaintiff, and as described in the Complaint, Plaintiff discovered that there was no record of the existence of either vessel. This despite the fact that Defendants AIMS and Gatchell had provided Plaintiff with detailed descriptions of the vessels and their alleged location.  The conclusion being that Defendants conned Plaintiff into contracting for the purchase and retooling of two fictitious vessels for a combined actual out-of-pocket loss of $176,000.00 together with the lost profits that Plaintiff would have made had Defendant AIMS actually delivered the two vessels on time for the Plaintiff to have used them during the 2022 Bahamian Lobster Season as intended.[1]

As set forth in the attached Declarations of Mr. Kenneth Smith and Mr. Shawn Smith, the resulting damages to Plaintiff equals a total of $299,537.70, in out-of-pocket expenses for the three ships and a total of $930,000.00, in lost profits for not having these ships available during the 2022 Bahamian Lobster Season.  **Ex. 1; Ex. 2**.

---

[1] Compl. ¶¶ 16-21, 24 and 63 as to the Lady Renee; Compl.  ¶¶ 26-31, 35, 63 as to the Happy Snapper.

3

## II.     RELEVANT PROCEDURAL BACKGROUND

The Complaint has eight counts. There are three counts for breach of contract against Defendant AIMS, one count each for: the Mary Elisabeth (Count 1), the Lady Renee (Count 2), and the Happy Snapper (Count 3).  There is one count for fraudulent inducement against both Defendants, for the Lady Renee and the Happy Snapper (Count 4). There is one count for conversion against both Defendants related to the Lady Renee and the Happy Snapper contracts (Count 5). This is because these contracts fall under the Yacht and Ship Brokers' Act, Fla. Stat. § 326.001 *et seq.* (the "Act"), that covers both Defendants. The Act requires that monies advanced to a shipbroker for the purchase of vessel for a client, must be kept in escrow pending the purchase of that vessel by the broker for the client.  This was not done with that portion of the money that Plaintiff paid Defendant AIMS for the purchase (as opposed to the repair or retooling) of the Lady Renee and the Happy Snapper.

Plaintiff also has a claim against both Defendants for unjust enrichment (Count 6), for violation of the Florida Deceptive and Unfair Practices Act ("FDUTPA") (Count 7) and for violation of the Act (Count 8). These are all for the fraudulent actions by both Defendants attendant to their conning of Plaintiff to pay Defendant AIMS for the purchase and delivery of the non-existent Lady Renee and Happy Snapper.

On June 5, 2023, a Clerk's Default was entered against Defendants AIMS and Gatchell on this Complaint.  On July 5, 2023, Plaintiff filed Plaintiff's Motion for Ex Parte Final Judgment. [D.E.15].  Plaintiff filed this motion ex parte because Federal Rule of Civil Procedure 5(a)(2) does not require service on a party who is in default for failing to appear, which was the case with the two Defendants.

4

On October 11, 2023, this Court entered an Order denying Plaintiff's Motion for Ex-Parte Final Judgment without prejudice. [D.E. 16]. In that Order, the Court explained that it had denied Plaintiff's Motion because it had been filed ex parte without leave of court or without a legal explanation or justification for doing so. The Court thereupon directed Plaintiff to file a renewed motion for default judgment and gave the Plaintiff two options. Option one was to refile as an ex parte motion, but with an explanation and legal authority as to why the motion was being filed ex parte. Option two was for Plaintiff to file the renewed motion without the "ex parte" designation and to serve Defendants with the renewed motion. The Court mandated that such renewed motion, under either option, be filed by no later than October 25, 2023.

Plaintiff is proceeding with "Option 2," and is not filing this motion ex parte, but rather this motion is being served on Defendants contemporaneously with its filing with the Court. As reflected in the certificate of service, Plaintiff is serving Defendants by email, FedEx, and US mail at their last known address pursuant to Federal Rule of Civil Procedure 5(b)(2(C).

Despite moving under Option 2, Plaintiff does want to take a moment to explain that it believed its earlier ex-parte filing of its motion for default judgment was justified under Federal Rule of Civil Procedure 5(a)(2). That rule expressly states that "[n]o service is required on a party who is in default for failure to appear." This, was the situation with both defaulted Defendants. Moreover, there is precedent in this Court for proceeding with a motion for default final judgment on an ex parte basis. *See Stross v. Roberson*, Case No: 6:19-cv-388-Orl-37LRH, at *3 n.3 (M.D. Fla. Oct. 3, 2019) (granting an injunction and damages on copyright infringement case on a motion for default judgment that had not

been served on the defendant holding that "service is not required on a party in default for failure to appear. *See* Fed. R. Civ. P. 5(a)(2).")

## III.    MEMORANDUM

Plaintiff satisfies the procedural prerequisites for a Rule 55(b)(2), default final judgment to be issued by this Court against Defendants AIMS and Gatchell.

### A.    *There is personal and subject matter jurisdiction on the face of the Complaint.*

Prior to issuing a default final judgment under Rule 55(b)(2), the Court's jurisdiction should appear on the face of the Complaint. *See Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) (citing 10 Federal Prac. & Proc. Civil 2d § 2682 at 407 and 6 Moore's Fed. Prac. ¶ 55.02[3]). Paragraphs 1 through 7 of the Complaint establish the requisite jurisdiction as to both AIMS and Gatchell, including subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(2). *See* Compl. ¶¶ 1-7.

### B.    *Plaintiff's allegations are adequately pled and are accepted as true for the purpose of assessing damages.*

Except for allegations relating to damages, the well-pleaded allegations of the Complaint are to be accepted as true upon entry of a default judgment. *See Carswell v. Bay County*, 854 F.2d 454, 456 n.2 (11th Cir. 1988) (holding that the defaulting party "may only contest damages"). This means that the Complaint "must state a cause of action." *Northwest Pub., Inc.*, 931 F. Supp. at 869. *Wilco Trading LLC v. Shabat*, Case No: 8:20-cv-579-TPB-JSS, at *4 (M.D. Fla. Mar. 8, 2021) ("When evaluating a motion to dismiss, a court looks to see whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'").

6

"Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded." *Northwest Pub., Inc.*, 931 F. Supp. at 869 (citing 10 *Federal Prac. & Proc.* Civil 2d § 2688 (1996 Supp.)).   If damages are not liquidated, Plaintiff must "establish that the amount is reasonable under the circumstances." *Id. Anheuser Busch*, *Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Wilco Trading LLC v. Shabat*, Case No. 8:20-cv-579-TPB-JSS, at *23 (M.D. Fla. Mar. 8, 2021) ("However, the court is not required to hold a hearing under Federal Rule of Civil Procedure 55(b)(2) where, as here, the Motion is sufficiently supported by affidavits and documentary evidence.") (citation and internal quotations omitted).

Here, Plaintiff's Complaint alleges facts under Florida contract and compatible tort and statutory claims that are well pled, as explained as to one or both Defendants as stated and set out in the Complaint and as explained in this Motion. In addition, the Complaint, together with the declaration that accompanies it, set forth the appropriate adequate basis to provide both Plaintiff's actual direct out-of-pocket losses and the lost profit compensatory damages that are reasonable under the circumstances.

**C.   Plaintiff is entitled to judgment against Defendant AIMS for breach of contract as to the Mary Elizabeth (Count 1), the Lady Renee (Count 2), and the Happy Snapper (Count 3).**

The elements for an action for breach of contract are: (1) a contract; (2) a breach of the contract; and (3) damages resulting from the breach of contract. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2nd DCA 2006).   Parties must also prove performance of their obligations under the contract in order to maintain a cause of action

7

for breach of contract. *Warfield v. Stewart*, No. 2:07-cv-332-FtM-27DNF, at *10 (M.D. Fla. Oct. 3, 2007).

Here, Plaintiff has set forth all the required elements for a breach of contract claim against Defendant AIMS for its failure to comply with the terms of the contracts reached between AIMS and Plaintiff.  These terms are set forth by letters from Defendant AIMS to Plaintiff and are attached as Exhibits A, D and E to the Declaration of Mr. Kenneth Smith[2] respectively, in connection with Count 1 (for the Mary Elizabeth), Count 2 (for the Lady Renee) and Count 3 (for the Happy Snapper).  All three of the letters (Mr. Kenneth Smith's Decl. ex. A, B, C) set forth the amounts to be paid by Plaintiff to Defendant AIMS for the services to be rendered by AIMS to Plaintiff, including the requirement that all three (3) re-tooled purchased vessels were to be delivered to Plaintiff in the Bahamas.[3]

Plaintiff further alleges in its Complaint, and verifies in the attached Declaration of Mr. Kenneth Smith (**Ex. 1**), that in all three contracts Plaintiff forwarded to Defendant AIMS, the agreed-upon full payment for the purchase, retooling and delivery to it in the Bahamas of the 3 vessels.[4]

Plaintiff further alleges that it sustained direct, out-of-pocket damages as to all three breaches of contract by Defendant AIMS, together with lost profits resulting from the failure of having the three vessels operational for its use during the 2022 Bahamian

---

[2] These letters were also attached as Exhibits A, C, and F to the Complaint.

[3] This is set out in line item no. 6 in the Mary Elizabeth contract (Exhibit A to Mr. Kenneth Smith's Declaration), and  line item no. 7 (Exhibits C and F to Mr. Kenneth Smith's Declaration) for the Lady Renee and Happy Snapper (Counts 2 and 3).

[4] Compl. ¶¶ 10-15 and 43 as to Count 1 for the Mary Elizabeth; Compl. ¶¶ 10, 16-20 as to Count 2 for the Lady Renee; and Compl, ¶¶ 10, 26-30 as to Count 3 for the Happy Snapper.

Lobster Season.[5]  The direct out-of-pocket losses together with the lost profits for the loss of use of each ship during the 2022 Bahamian Lobster Season attributable to Defendant AIMS are verified and substantiated through the attached Declarations of Mr. Kenneth Smith, and Mr. Shawn Smith.  **Exs. 1** and 2. As to the direct out-of-pocket damages to Plaintiff, they are $123,537.71 for the rescue, storage and repair of the Mary Elizabeth, $96,000 for the monies paid by Plaintiff for the Lady Renee and $80,000 for the monies paid by Plaintiff for the Happy Snapper.

As for Plaintiff's claim for lost profits as to the breach of contract for each of the three vessels, the basis for each are set forth in the declarations of Mr. Kenneth Smith. and Mr. Shawn Smith. **Exs. 1-2** . These damages are for the amounts of $310,000 for the Mary Elizabeth, $310.000 for the Lady Renee, and $310,000 for the Happy Snapper, as set forth in the declaration of Mr. Kenneth Smith and Mr. Shawn Smith. **Ex. 1**  ¶¶ 24-26; **Ex. 2** ¶¶ 7-10.

The law in Florida is that an owner/operator of a business, such as Mr. Kenneth Smith, is qualified to testify as to the lost profit sustained by the owner's business attributable to a breach of contract. Moreover, expert testimony is not a prerequisite to establishing lost profits. *Local Access, LLC v. Peerless Network, Inc.*, No: 6:14-cv-399-Orl-40TBS, at *10-11 (M.D. Fla. Aug. 24, 2016) ("[I]t is well-settled that the owner or manager of a business need not be qualified as an expert to testify about the value of the business, its assets, or its revenues so long as his proffered testimony falls within the

---

[5] Compl. ¶¶ 13, 15, 44-46 as to Count 1 for the Mary Elizabeth; Compl. ¶¶ 16,21,25, 51-52 as to Count 2 for the Lady Renee; and Compl. ¶¶ 26, 31, 57-58 as to Count 3, for the Happy Snapper.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909  FAX: 305.735.6469

scope of his experience and management of the business. *Gregg v. U.S. Indus.*, *Inc.*, 887 F.2d 1462, 1469 (11th Cir. 1989); *see also* FED. R. EVID. 701 advisory committee's note to 2000 amendments ("[M]ost courts have permitted the owner or officer of a business to testify to the value of projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."); *see also  Pandora Jewelry, LLC v. Cappola Capital Corp.*, No. 8:06-cv-845-T-24 MSS, at *2 (M.D. Fla. July 13, 2009) (holding that a plaintiff is permitted to prove its lost profits without expert testimony).

In addition, federal courts have often allowed a company's outside accountant such as Mr. Shawn Smith to testify as to a company's lost profits based that person's personal knowledge in the exercise of his professional duties. *Ryan Dev. Co. v. Indiana Lumbermens Mutual Ins. Co.*, 711 F.3d 1165-1170 (10th Cir. 2013) (approving testimony of accountant as to company's lost profits under Rule 701 where the accountant prepares such valuations on personal experience with the company, uses basic math, and no outside expert reports.). *See also First Annapolis Bancorp*, *Inc. v. United States*, 72 Fed. Cl. 204, 207 (2006) ("[A] lay witness accountant may testify on the basis of facts or data perceived in his role as an accountant based on his personal knowledge of the company."); *Teen-Ed*, *Inc. v. Kimball  Int'l*, *Inc.*, 620  F.2d  399,  402-04 (3d  Cir.1980) (admitting lay opinion testimony by an accountant concerning lost profits).

Consequently, Plaintiff's proffers that the attached Declarations of Mr. Kenneth Smith and Mr. Shawn Smith, provide substantial competent evidence of Plaintiff's contractual damages, for counts 1-3 including lost profits.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909  FAX: 305.735.6469

D. ***Count 4 - Fraud in the Inducement against both Defendants for the Lady Renee and the Happy Snapper.***

A fraud-in-the-inducement claim entails four elements: (1) the defendant misrepresented a material fact; (2) the defendant knew or should have known the falsity of the statement; (3) the defendant intended that the representation would induce the plaintiff to enter into a contract or business relationship; and (4) the plaintiff suffered injury in reliance on the misrepresentation. *Alt. Materials v. Monroe*, 5:20-cv-239-AW/MJF, at *21 (N.D. Fla. Jan. 23, 2023).

Moreover, "[f]raud in the inducement is a recognized intentional tort that can subject a corporate officer to individual liability." *First Fin. USA, Inc. v. Steinger*, 760 So.2d 996, 998 (Fla. 4th DCA 2000) (citation omitted); *see Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA 1981) ("If . . . a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort.") (quotation omitted). *Alt. Materials v. Monroe*, 5:20-cv-239-AW/MJF, at *21 (N.D. Fla. Jan. 23, 2023); *First Financial USA, Inc. v. Steinger*, 760 So. 2d 996, 998 (Fla. 4th DCA 2000) ("Fraud in the inducement is a recognized intentional tort that can subject a corporate officer to individual liability.")

Count 4 claim for fraud in the inducement is Defendants' sale of the fictitious, non-existing Lady Renee and Happy Snapper to scam Plaintiff into transferring $176,000 to Defendant AIMS.  Here, Plaintiff properly alleges that Defendant Gatchell is personally

liable for his participation in Defendant's successful swindle of tricking the Plaintiff into delivering $176,000 to buy and fix up fishing vessels that did not exist.[6]

Florida law provides remedies for fraudulent inducement claims, such as the one made here in Count 4. "Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract." *GG Inv. Realty v. S. Beach Resort Dev.*, 337 So. 3d 431, 437 (Fla. 3d DCA. 2022).

Here, Plaintiff chooses to ratify the Lady Renee and Happy Snapper contracts and seeks the same actual direct out-of-pocket and lost profit damages set out and explained in the Declarations of Mr. Kenneth Smith and Mr. Shawn Smith, as to Plaintiff's contractual damages as to these two contracts. This is because Florida law is clear that a Plaintiff is entitled to lost profits in a claim for damages in the context of a claim for fraudulent inducement *Al Hewar Envtl. & Public Health Establishment v. Southeast Ranch, LLC*, No. 10-80851-CV-HURLEY/HOPKINS, at *6 (S.D. Fla. Nov. 8, 2011) ("As a result of the fraudulent inducement, [plaintiff] Al Hewar is entitled to "the difference between the value represented and the value receiver, [which] allows the recovery of lost profits if they can be proven with reasonable certainty.").

Here, as to Count 4, Plaintiff is entitled to the amounts set forth in the Declarations of Mr. Kenneth Smith and Mr. Shawn Smith's  as to its out-of-pocket and lost profits damages for Defendant AIMS' breach of the Lady Renee and Happy Snapper contracts. The sole difference being that here, Plaintiff is also able to hold Defendant Gatchell

---

[6] *See* Compl. at ¶¶ 16-21, 24, 63 as to the Lady Renee and Compl. ¶¶ 26-31, 35, 63 as to the Happy Snapper.

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131   Tel: 305.377.0909   Fax: 305.735.6469

individually liable for these damages.  As to Defendant AIMS, while it is also separately and distinctly liable for these damages under this Count 4 for fraudulent inducement, as a practical matter, the damages under this Count 4 are identical to and repetitive to Defendant AIMS' damages for its breach of contract claims under Counts 2 and 3 and are therefore, duplicative of those damages.

Therefore the damages to be assed against Defendant Gatchell for fraud in the inducement should be $176,000, for Plaintiff's out-of-pocket loss related to the Lady Renee and Happy Snapper contracts, together with lost profits for these two contracts totaling $620,000, as set forth in paragraphs 12-21 and 24-26 of Mr. Kenneth Smith's Declaration and paragraphs 7-11 of Mr. Shawn Smith's Declaration.

**E.**      ***Count 5 Conversion, as to both Defendants, as to a percentage of Plaintiff's payment required to be held in escrow for the purchase of the Lady Renee and the Happy Snapper.***

Plaintiff's Count 5 is for conversion against both Defendants.  Defendants are "brokers" under the Act, such that any monies provided to them for the purchase of ships must be placed in escrow until the closing of the transaction whereupon the title of the ship in question is transferred to the client.[7]

Plaintiff delivered a total of $113,000 to the escrow account of Defendant AIMS, for the purchase of the Lady Renee ($65,000) and the Happy Snapper ($48,000).[8] Paragraphs 65-73 of the Complaint allege that Defendants absconded with Plaintiff's escrowed monies which they were legally required to keep in escrow and that they represented to Plaintiff that they would keep in escrow.  Moreover, Plaintiff specifically

---

[7] *Id.* ¶¶ 1-10, 16-19 23-29, 35-38, 67-73.
[8] *Id.* ¶¶ 18, 28; *see also* Compl. Exs. D, G.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909    FAX: 305.735.6469

alleges that Defendant Gatchell embezzled the escrow funds for both contracts for his own purpose.[9]

Florida law holds that escrowed funds can be the subject of a conversion claim and that a principal officer of the firm holding escrowed funds can be liable for conversion if he takes the escrowed funds for his own use. *Kenet v. Bailey*, 679 So. 2d 348, 351 (Fla. 3d. DCA 1996) (holding law partner responsible for converting client's escrowed funds placed in his law firm's account when he was found to have used the escrowed funds for his personal use).

Here, both Defendants are alleged to have converted escrowed funds in the amount of $113,000 for their own use. These damages, together with their corresponding prejudgment interest, are subsumed within the damages previously outlined and requested within the breach of contract and fraudulent inducement claims set forth as to Counts 1-4 against the two Defendants, as applicable.

**F.    *Count 6, Unjust Enrichment as to AIMS as to the Lady Renee and the Happy Snapper.***

Count 6 for unjust enrichment against AIMS for the purchase of the Lady Renee and the Happy Snapper was inadvertently brought and should be dismissed. This is because this claim is precluded by the existence of the Parties' written contract that are the subject of Counts 2 and 3 of this action. *Greenberg v. Pike Elec. Corp.*, No. 8:14-cv-795-T-33TBM, at *8 (M.D. Fla. Feb. 5, 2015) (An unjust enrichment claim is "precluded by the existence of an express contract between the parties concerning the same subject

---

[9] Compl. ¶ 73.

14

matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).")

G.    ***Count 7, FDUTPA Claim against both Defendants.***

To state a claim under FDUTPA, a party must plead: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages or aggrievement. *See Third Party Verification*, *Inc. v. Siqnaturelink*, *Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). A deceptive act is one that is likely to mislead consumers. *Id.* at 1326. An unfair practice is one that offends established public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id. Wilco Trading LLC v. Shabat*, Case No: 8:20-cv-579-TPB-JSS, at *15 (M.D. Fla. Mar. 8, 2021)

Plaintiff states such a cause of action against these Defendants for brokering the purchase of two ships, the Lady Renee and the Happy Snapper that did not exist while pocketing the monies Plaintiff sent them to purchase it. Defendants did so, all the while committing wholesale violation of a specific licensing statute (the Act) that makes many of the various actions they engaged in to complete this embezzlement from Plaintiff a basis to revoke their brokerage license and in some cases regarding dealing with escrow accounts, a felony crime.[10]

This liability is direct against the Defendant AIMS with whom Plaintiff had its contract for the purchase of these two ships. However, it is also applicable as against Defendant Gatchell who Plaintiff alleges owned and operated and knowingly participated

---

[10] Compl. ¶¶ 87(a)-(f), 89 (as to the various actions in violation of the Act); Compl. ¶¶ 100-102 (citing to Fla. Stat. §§ 326.004-.005).

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909    FAX: 305.735.6469

and directed the deceptive acts and unfair practices that swindled Plaintiff. [11] *Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, 20-cv-25318-BLOOM/Otazo-Reyes, at *17 (S.D. Fla. June 20, 2023) ("Once the liability of an entity for a violation of FDUTPA is established, a plaintiff can establish the liability of an individual defendant who (1) participated in the deceptive acts or unfair practices that gave rise to the entity's liability or had control over those actions and (2) had knowledge of those acts or practices.").

Here there can be little question that Defendants' actions as alleged, amount to unfair, deceptive and unconscionable acts or practices that are in violation of FDUTPA.

The next issue is damages. Here, Plaintiff is claiming it actual out of pocket damages as to the funds it delivered to Defendant AIMS for the purchase of the non-existent Lady Renee and the Happy Camper which Defendants never delivered to Plaintiff.[12]  The amounts of Plaintiff's actual damages is its out-of-pocket payment for each vessel that was never delivered to Plaintiff by Defendants.  That amount is $96,000 for the Laddy Renee and $80,000 for the Happy Snapper.  **Ex.** 1 Decl. of Kenneth Smith ¶¶ 12-14 , 18-21.  Florida courts define actual damages under FDUTPA to be "the difference in the market value of the product in which it was delivered and its market value in the condition it should have been delivered." *Wilco Trading LLC v. Shabat*, Case No: 8:20-cv-579-TPB-JSS, at *15 (M.D. Fla. Mar. 8, 2021).  Here, that amount is $96,000 and $80,000 value of these two vessels minus the zero value of the undelivered ships.

---

[11] Compl. ¶¶ 6, 8, 10, 32, 87-89 (Defendant Gatchell's ownership and control of Defendant AIMS and his participation in the subject bad acts of brokering the purchase of two non-existent vessels and pocketing Plaintiff's money).
[12] Compl. ¶¶ 16, 20 (Lady Renee); Compl. ¶¶ 26, 28, 35-37 (Happy Camper).

Pl.'s Renewed Mot. for Default Final J.
Case No.: 6:23-cv-00759-PGB-LHP

As a further element of damages, Plaintiff is entitled to an award of attorneys' fees if it is determined to be the prevailing party on this claim.[13]

### H. **Count 8, Claim against both Defendants for Violation of the Florida Yacht and Shipbrokers Act.**

Florida Statute § 326.004(11) provides that:

Any person injured by the fraud, deceit, or willful negligence of any broker or salesperson or by the failure of any broker or salesperson to comply with the Yacht and Ship Broker's Act or other law may file an action for damages upon the respect bonds against the principals and surety.

The statute further identifies that the total amount of the bond in question that Defendants are required to have as a condition of having their Yacht and Ship Broker's License is $25,000. FLA. STAT. § 326.004(7)(a).

Here, there is little question that Defendants' have violated their requirements under the Act and that the Plaintiff has been injured by the "fraud, deceit or willful negligence" of the Defendants in their capacity as brokers under this statute. Defendants should therefore be divested of any rights they have to the $25,000 bond identified by this statute as a condition of their license in favor of Plaintiff and the Court should hold as much.

## IV.    CONCLUSION

Plaintiff seeks out-of-pocket damages against Defendant AIMS in the amount of $299,537.70 and $930,000   in lost profits for Defendant AIMS breach of the three contracts (Counts 1-3), as set forth in the Declarations of Mr. Kenneth Smith and Mr. Shawn Smith . Plaintiff also seeks out-of-pocket damages in the amount of $176,000 and

---

[13] Fla. Stat. § 501.2105(1).

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909  FAX: 305.735.6469

lost profits in the amount of $620,000 against Defendants AIMS and Gatchell based on the fraud in the inducement theory for the Lady Renee and the Happy Snapper, as set out in Count 4,.  The damages against Defendant AIMS requested in Count 4 would be duplicative of and subsumed within the damages requested in the breach of contract Counts 1-3.  Meanwhile, the damages against Defendant Gatchell, pursuant to Count 4 for the Lady Renee and the Happy Snapper while  duplicative of the damages assessed against Defendant AIMS, would be different in that it would hold Gatchell jointly and severally liable for that portion of the damages that overlap between the two Defendants.

The damages as to Count 5 for conversion would be against both Defendants jointly and severally in the amount of $113,000 deposited in escrowed with them by Plaintiff.. This amount is subsumed within and duplicative of the contract damages and/or the fraud in inducement or FDUTPA damages Plaintiff anticipates securing based on its claims for breach of contract (Counts 1-3) , fraud in the inducement (Count 4) or FDUTPA (Count 7).

The damages as to Count 7 for the FDUTPA violations would be for the actual damages amount of $176,000 for Plaintiff's combined payment for the Lady Renee and Happy Snapper vessels that were never delivered to Plaintiff. These damages would be joint and several against both Defendants and as above would be subsumed and duplicative of damages in Counts 1-5.

Finally, the damages as to Count 8, for breach of the Yacht and Ship Brokers Act should be an order by the Court finding that Defendants are divested as to any rights they have as to the $25,000 bond attendant to their Yacht and Ship Brokers' license as set out by Florida Statute § 326.004(7)(a).

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909    FAX: 305.735.6469

Pl.'s Renewed Mot. for Default Final J.
Case No.: 6:23-cv-00759-PGB-LHP

The Court can determine the appropriate damages to award Plaintiff without an evidentiary hearing just on the strength of the submission made with this Motion.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff asks this Court to enter a Default Final Judgment of $1,229,537.7, together with  interest against Defendant AIMS as to Counts 1-3 for the breach of contract of the Mary Elizabeth, the Lady Renee and the Happy Snapper. In addition, Plaintiff requests a separate Default Final Judgment in the amount of $796,000 against Defendant Gatchell, pursuant to Court 4 for Fraud in the Inducement which judgment of $796,000 is joint and several with the judgment  against Defendant AIMS.. Plaintiff further requests that the Court reserve jurisdiction to determine entitlement to attorneys' fees pursuant to the Plaintiff's FDUTPA claims.

Dated: October 13, 2023                  Respectfully submitted,

DE LA PEÑA GROUP, P.A.
*Attorneys for Plaintiff*
701 Brickell Avenue, 15th Floor
Miami, FL  33131
Tel:  305.377.0909
Fax: 305.735.6469
E-mail: service@dlp-law.com
        paralegal@dlp-law.com

BY:    s/ Leoncio E. de la Peña D.
       Leoncio E. de la Peña D., Esq.
       Florida Bar No. 454508
       Tracy Pérez, Esq.
       Florida Bar No. 860441

19

Pl.'s Renewed Mot. for Default Final J.
Case No.: 6:23-cv-00759-PGB-LHP

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on

October 13, 2023, parties of record as shown on the Service List below.

BY:    *s/ Leoncio E. de la Peña D.*
              Leoncio E. de la Peña D., Esq.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131    TEL: 305.377.0909    FAX: 305.735.6469

Pl.'s Renewed Mot. for Default Final J.
Case No.: 6:23-cv-00759-PGB-LHP

## **SERVICE LIST**
*Our Andros Fisheries Ltd. v. All Island Marine Services, LLC, et al.*
Case No. 23 cv 00759

**DEFENDANT,**
**ALL ISLAND MARINE SERVICES, LLC**

**Federal Express**
c/o Carol Gatchell
Registered Agent
8951 Lake Dr, Unit 304
Cape Canaveral, FL 32920

**First Class Mail**
PO Box 954
Cape Canaveral, FL 32920

**Electronic Mail**
allislandmarineservices@gmail.com

**DEFENDANT,**
**FREDERICK GATCHELL**

**Federal Express**
8951 Lake Dr, Unit 304
Cape Canaveral, FL 32920

**First Class Mail**
PO Box 954
Cape Canaveral, FL 32920

21

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**
CASE NO. 6:23-cv-00759-PGB-LHP

OUR ANDROS FISHERIES LTD.

    Plaintiff,

v.

ALL ISLAND MARINE SERVICES, LLC and
FREDERICK GATCHELL

    Defendants.

_____/

**<u>DECLARATION OF KENNETH SMITH</u>**

    KENNETH SMITH declares and says that:

    1.    My name is Kenneth Smith, a resident of Nassau, Bahamas and of legal age.

    2.    I am the managing director/president of Plaintiff, Our Andros Fisheries Ltd. ("Our Andros"), and I make this Declaration based upon my personal knowledge.

    3.    Our Andros is a Bahamian limited liability company.  It has been running a lobstering operation in the Bahamas since early 2022 and is a profitable company. My partner at Our Andros and I previously started in the lobstering business in the summer of 2021.

    4.    This Declaration is made in support of Plaintiff's Motion for Default Final Judgment against Defendants All Island Marine Services, LLC ("AIMS") and Frederick Gatchell ("Gatchell").

## THE CONTRACTS

### I.   The Mary Elizabeth

5.      On or about January 13, 2022, Plaintiff entered in a contract with AIMS, whereby AIMS secured for the Plaintiff a 66.8 ft. trawler for $75,000, named the "Mary Elizabeth." The parties further agreed that AIMS would conduct a series of specific additional repairs and additions, and deliver the repaired vessel to the Bahamas for the additional sum of $68,000.  A copy of the letter contract by AIMS to Plaintiff dated January 13, 2022, memorializing the above referenced terms (the "Mary Elizabeth Contract") is attached as **Exhibit A** to this Declaration (and was also attached as exhibit A to the Complaint).  The Mary Elizabeth Contract for the purchase and the additional repairs and additions of the vessel total $143,000.

6.      On or about March 22, 2022, the Mary Elizabeth Contract was modified by reducing $8,000 of the total retrofitting allowance, to reflect some work that was not able to be done. This reduced the total amount of the Mary Elizabeth Contract from $143,000 to $135,000, and was to generate a credit to Plaintiff. This modification to the contract was done via email, which email also confirmed that AIMS had been paid in full on this contract and further confirmed AIMS' obligation for the prompt delivery of the Mary Elizabeth to Plaintiff in Nassau, Bahamas.  A copy of this March 22, 2022 email is attached as **Exhibit B** to this Declaration (and was also attached as exhibit B to the Complaint).

7.      The Mary Elizabeth was going to be delivered to Plaintiff in Nassau Bahamas on or about June 27, 2022.  However, en route to Nassau, the prop of the Mary Elizabeth was lost at sea and the Mary Elizabeth was left adrift at sea where the Plaintiff

needed to rescue and tow her to Nassau for repairs. In Nassau, the Mary Elizabeth required costly and time-consuming repairs including the replacement of the vessel's shaft and prop and repair of the keel cooler as well as compromised hull due to losing the propeller for a total cost of repairs of $90,196.57, which had to be paid by Plaintiff.  This, in addition to the cost of salvaging the ship at sea, and  ultimately the towing of the Mary Elizabeth to North Andros and then Freeport to dry dock facility, for a cost of $33,341.14 totaling the amount of $123,537.71.   A copy of repair and other charges (for $90,196.57) that were made on the Mary Elizabeth by and from the Bradford Marine facility in Freeport Bahamas is attached as Exhibit C to this Declaration.   These damages are further discussed and identified in paragraphs 22-23 of this Declaration.

8.      The prop of the Mary Elizabeth would not have been lost in transporting the Mary Elizabeth to Nassau, if AIMS had properly completed the refitting it was hired and paid for, such that AIMS is responsible for the monies that the Plaintiff has had to pay to repair the work that AIMS failed to properly do.

9.      As of this date, Defendants have not reimbursed Plaintiff the total of $123,537.71 for the cost of the towing, storage and repair of the Mary Elizabeth.

10.      The retrofitted Mary Elizabeth was supposed to be delivered fully functional to Plaintiff in the Bahamas, by mid-June, 2022  prior to the commencement of the 2022 Bahamas Lobster Season that ran from August 2022 through March 2023.

11.      Due to Defendant's delay in delivering a fully-functional Mary Elizabeth in Bahamas, Plaintiff missed all of the Bahamas Lobster Season, causing the Plaintiff the loss of the projected profits it had calculated it would make if it had been able to use the Mary Elizabeth as anticipated.   The repairs on the Mary Elizabeth were not completed

because of supply chain issues procuring the prop and other items to repair boat. Additionally as we continue to have mechanics inspect the vessel more issues were uncovered such that the vessel is still not seaworthy.  The projected lost profits that Plaintiff would have made had it had the use of the Mary Elizabeth for the 2022 Bahamian Lobster Season, as well as the basis for that projection, is set forth in paragraphs 24-26 of this Declaration.

## II.    **The Lady Renee**

12.    On or about March 23, 2022, Plaintiff entered in a second contract with AIMS, whereby AIMS committed to secure for the Plaintiff a 45 ft. fiberglass trawler, located in Alabama, called the Lady Renee for $65,000. The parties further agreed that AIMS would conduct a series of specific additional repairs and additions and deliver the repaired vessel to the Bahamas for the additional sum of $31,000.  A copy of the letter contract by AIMS to Plaintiff dated March 23, 2022, memorializing the above referenced terms (the "Lady Renee Contract") is attached as **Exhibit D** to this Declaration (and was also attached as exhibit C to the Complaint).[1]  The Lady Renee Contract for the purchase and the additional repairs and additions of the vessel total $96,000.

13.    Pursuant to the Parties Contract the retrofitted Lady Renee was originally supposed to be delivered to Plaintiff in the Bahamas, in or about July 2022 and certainly before the commencement of 2022 Bahamas Lobster Season that ran from August 2022 through March 2023.

---

[1] The retrofit allowance in the Lady Renee Contract states it is for $32,000 as opposed to $31,000. However, the $32,000 amount is the result of incorrect math. Adding the individual totals of the retrofitting to be done, as set out in the Lady Renee Contract, adds up to $31,000, not $32,000.

14.     As of this date, Defendants have failed to deliver the Lady Renee.  Plaintiff has continually demanded that AIMS deliver to it in the Bahamas, as contracted, the refitted Lady Renee 45 ft. trawler it bought. As set forth in paragraph 20 of this Declaration Plaintiff has paid the full 96,000-contract price for the Lady Renee to Defendant AIMS as of November 29, 2022.

15.     Due to Defendants failure in delivering the Lady Renee in the Bahamas, Plaintiff missed being able to use the Lady Renee for  the 2022 Bahamas Lobster Season, causing the Plaintiff the loss of the projected profits it had calculated it would make if it had been able to use the Lady Renee as anticipated. [2] The projected lost profits that Plaintiff would have made had it had the use of the Lady Renee for the 2022 Bahamian lobster season, as well as the basis for that projection is set forth in paragraphs 24-26 of this Declaration.

## III.    The Happy Snapper

16.     On or about March 23, 2022, simultaneously with the contracting with AIMS for the Lady Renee Contract, Plaintiff entered in a third contract with AIMS whereby AIMS committed to secured for Plaintiff another 45-foot fiberglass trawler located in Alabama, called the Happy Snapper for $48,000. The parties further agreed that AIMS would conduct a series of specific additional repairs and additions and deliver the repaired vessel to the Bahamas, for the additional sum of $32,000.  A copy of the letter contract by AIMS to Plaintiff dated March 23, 2022, memorializing the above referenced terms (the "Happy Snapper Contract") is attached as **Exhibit E** to this Declaration (and was also

---

[2] Plaintiff will also not have the Lady Renee available for the 2023 lobster season that starts now in August 2023, but is not making a claim for lost profits for this or any subsequent lobster season.

attached as exhibit F to the Complaint).[3]   The Happy Snapper Contract for the purchase and the additional repairs and additions of the vessel total $80,000.

17.     Plaintiff has repeatedly demand that Defendants deliver the refitted Happy Snapper to Plaintiff in the Bahamas, but as of this date, Defendants have failed to deliver the Happy Snapper.  As set forth in paragraph 20 of this Declaration, Plaintiff has paid the full $80,000 contract price for the Happy Snapper to Defendant AIMS as of December 22, 2022.

18.     Pursuant to the Parties' Contract, the retrofitted Happy Snapper was originally supposed to be delivered to Plaintiff in the Bahamas, in or about July 2022 and certainly before the commencement of 2022 Bahamas Lobster Season that ran from August 2022 through March 2023.

19.      Due to Defendants failure in delivering the Happy Snapper in the Bahamas, Plaintiff missed being able to use the Happy Snapper for  the 2022 Bahamas Lobster Season, causing the Plaintiff the loss of the projected profits it had calculated it would make if it had been able to use the Happy Snapper as anticipated.[4] The projected lost profits that Plaintiff would have made had it had the use of the Happy Snapper for the 2022 Bahamian Lobster Season, as well as the basis for that projection is set forth in paragraphs 24-26 of this Declaration.

---

[3] The retrofit allowance in the Happy Snapper Contract states it is for $33,000 as opposed to $32,000. However, the $33,000 amount is the result of incorrect math. Adding the individual totals of the retrofitting to be done as set out in the Lady Renee Contract adds up to $32,000, not $33,000.

[4] Plaintiff will also not have the Happy Snapper available for the 2023 lobster season that starts now in August 2023, but is not making a claim for lost profits for this or any subsequent lobster season.

## PAYMENTS MADE TO DEFENDANTS

20.    From November 2020 to December 2022, Plaintiff made the following payments, via wire transfer, to AIMS for the contracts of the Mary Elizabeth, the Lady Renee and the Happy Snapper:

| Date | Amount |
|------|--------|
| 11/30/2020 | $2,500.00[5] |
| 06/14/2021 | $15,000.00 |
| 01/14/2022 | $80,000.00 |
| 01/21/2022 | $20,000.00 |
| 02/15/2022 | $25,000.00 |
| 03/16/2022 | $11,000.00 |
| 04/05/2022 | $10,000.00 |
| 04/25/2022 | $50,000.00 |
| 06/08/2022 | $20,000.00 |
| 08/12/2022 | $10,000.00 |
| 11/14/2022 | $19,000.00 |
| 11/29/2022 | $18,906.17 |
| 12/12/2022 | $15,000.00 |
| 12/22/2022 | $15,000.00 |
| **TOTAL PAYMENTS** | **$311,406.17** |

A copy of the company's record of the wire transfer payments for the above chart is attached as Composite **Exhibit F** to this Declaration. As of December 22, 2022, Plaintiff had made full payment on all three contracts to Defendant AIMS.

21.    Plaintiff paid AIMS and Gatchell the sum of $311,406.17, for which, in return Plaintiff only received in Bahamas one vessel, the Mary Elizabeth.  Plaintiff paid $135,406.17 for the  Mary Elizabeth Contract . Subtracting $135,406.17 from $311,406.17 leaves a total of $176,000.. This is the amount paid by Plaintiff for the Lady Renee and the Happy Snapper, neither of which was ever delivered to Plaintiff.

---

[5] The wire transfer of November 30, 2020, was for $15,500, but only $2,500 was to be applied to the contract of the Mary Elizabeth.  The difference of $13,000 was in payment for a retrofit work done on another vessel, the Olivia Joan, which is not part of this lawsuit.

## OTHER AMOUNTS DUE BY DEFENDANTS

22.    As previously stated, en route to Nassau, the prop of the Mary Elizabeth was lost requiring the rescue at sea together with the repair and replacement of the vessel's shaft, for a total in excess of $123,537.71, which was paid by Plaintiff as set forth in paragraph 7 and Exhibit C.  .

23.    As of this date, Defendants have not reimbursed Plaintiff for its out-of-pocket damages for the costs of towing, storing, and repairing the Mary Elizabeth in the amount of $123,537.71.

## PLAINTIFF'S LOST PROFITS FOR THE 2020  LOBSTER SEASON

24.    Plaintiff projected profits for each of the Mary Elizabeth, the Lady Renee and the Happy Snapper for their timely use in the 2022 Bahamian Lobster Season.  Those projections, were prepared by Plaintiff's outside certified public accountant Shawn Smith in November 2021 at my request and used and relied upon by me to purchase the three vessels that Plaintiff purchased from AIMS. The Declaration of Shawn Smith attesting to these projections is being filed simultaneously with my declaration in support of the Plaintiff's Motion for Default final Judgment.

25.    As set forth in the in the Declaration of Shawn Smith, and based on the projections he made for the company, Plaintiff's anticipated making $310,000 in operating profit for each of the three vessels purchased from AIMS during the 2022 Bahamian lobster season.

26.    In addition, as set forth by Mr. Shawn Smith in his declaration, Plaintiff made an operating profit of $347,258.00 on the sole vessel that it had operating during the 2022 lobster season. That vessel was the "Our Andros One" This vessel was secured for the

Plaintiff in 2021  and is a vessel comparable in size, ability and capacity to each of the three vessels that the Plaintiff purchased but failed to secure (at all or at least in operating condition) from AIMS for use in the 2020 lobster season.  Consequently, it is my belief that we would have made a similar profit for each of the three vessels purchased from AIMS if we had had them available for use as we had contracted with it to provide. To that effect we believe Plaintiff's lost profits for each of these vessels, the Mary Elizabeth, the Lady Renee and the Happy Snapper in the minimum amount of $310,000 each for a total of lost profits for all three vessels of $930,000.

27.    I have met Defendant Gatchell and can attest to the fact that this Defendant is not a child, is not incompetent and it not a current member of the armed forces of the United States.

## **DECLARATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this <u>30th</u> day of June, 2023.

_____
KENNETH SMITH

9

# Exhibit A

## ALL ISLAND MARINE SERVICES LLC

PO Box 954

Cape Canaveral, FL 32920

Capt. Fred 321-536-4855



1/13/2022

Ken@ bahamagroup.com

Dear Ken

    Thank you for contacting us regarding a fiberglass vessel for your lobstering operation in the Bahamas.

    I have taken into consideration your requirements in a vessel and your budget of $135,000.00 USD, I feel that the following vessel and proposal may be your best option. The vessel is called Mary Elizabeth it is a 66.8 ft. Fiberglass over wood Trawler. The main engine is 12 cylinder Detroit, it is very low fuel consumption and has only 3,555 hours on it since last overhaul. It also has a used 371 Detroit Engine 25kw generator. All Island Marine Services will install a new generator on vessel also. Vessel has 8000 gallon fuel capacity and 4000 gallon water capacity. The fish hold has a 50,000 lb. capacity and is well insulated, but no freezer.

    The price of this vessel is  $75,000.00 as she sits in North Carolina. This amount will need to be paid before any of the retrofitting will be done.           $75,000.00

I can also have the following completed after your purchase of the vessel.

| | | | |
|---|---|---|---|
| 1. | New Freezers installed in fish hold. | (2) | $18,500.00 |
| 2. | Additional sleeping quarters to make a total of 15 person. | | $ 8,000.00 |
| 3. | Single Side band radio, autopilot, & GPS installed. | | $ 2,500.00 |
| 4. | Clean and repaint deck house and outer deck. | | $ 3,000.00 |
| 5. | Haul vessel. Scrape, pressure wash and paint bottom with Anti-fouling paint, replace zincs where needed. Check Shaft, Prop & Rudder. Repair any needed damage area to hull. | | $10,000.00 |
| 6. | Deliver vessel to Nassau, Bahamas (North Carolina to Nassau) | | $14,000.00 |
| 7. | Remove old fishing gear from vessel. | | $ 2,500.00 |
| 8. | Unknown and miscellaneous items that will crop up. | | $10,000.00 |

The total for the above would be right at        Total for Retrofit    $68,000.00

NOTE: The above numbers are our best guestimate.

We will do payments in 3 scheduled payments.

1. $30,000.00 Prior to commencement of work.
2. $20,000.00 Upon purchasing equipment.
3. $18,000.00 Upon completion of work.          Total Retrofit          $68,000.00

I feel we can complete this project in 30-45 days.

It is our pleasure to do this work for you.


Sincerely,


Capt. Fred Gatchell

# Exhibit B

# M Gmail

**Ken Smith <kennethologist@gmail.com>**

## Capt. Alex
3 messages

---

**All Island Marine Services** <allislandmarineservices@gmail.com>    Tue, Mar 22, 2022 at 9:30 AM
To: Ken Smith <kennethologist@gmail.com>

Good Morning Ken
There is still a balance of $10,000.00 owing. The Marina is asking for a deposit before the haul out on April 8th. Also, we will be sending invoices for the (2) other vessels you sent the deposit on already.  Thanks

Sincerely,
The Aims Team
Capt. Fred
Marshal
Sheri

---

**Ken Smith** <kennethologist@gmail.com>    Tue, Mar 22, 2022 at 9:33 AM
To: All Island Marine Services <allislandmarineservices@gmail.com>

Hello All,

Just want to make sure you're aware that this will cover the entire invoice and no additional payment will be required to have the boat transported here.

Also there is an item on the invoice about building the house that you opted out of so that's an additional $8k that should be credited.

Let us know our current statement on the existing boat ie what's completed what's outstanding etc so we can all be on the same page and I can share with my partners.

Thank you
[Quoted text hidden]
--
Amor Fati Amor.

---

**All Island Marine Services** <allislandmarineservices@gmail.com>    Tue, Mar 22, 2022 at 9:44 AM
To: Ken Smith <kennethologist@gmail.com>

Yes, I understand this is the final payment. As for the $8000.00 I have subtracted this amount from the retro fit. The total was $68,000.00, I removed the $8000.00 for the additional sleeping quarters which made it $60,000.00. You paid $75,000 and sent additional monies of $50,000.00. That leaves the balance of $10,000.00. If you have any other questions, please let me know.

Sheri

Sincerely,
The Aims Team
Capt. Fred
Marshal
Sheri

---

[Quoted text hidden]

# Exhibit C



M E M O

```
                                    ACCT# 10109    515868
                                    06/21/23
                                                    Page: 1
Vessel: OUR ANDROS II                   TXID# 0

OUR ANDROS FISHERIES LIMITED
MANGROVE CAY
ANDROS, BAHAMAS


101AA      REHAUL:HAUL AND FLOAT ON TRAVELIFT :  Haul,        1,088.00
           block, and float vessel on a 150 Marine
           Travelift.  NOTE: Does not include divers or
           specialized blocking if needed.  Completion of
           a critical lift plan is required if there are
           no markings or information on sling
           locations.
                ********* QUOTE 515868 *********

101A       HAUL AND FLOAT ON TRAVELIFT Haul, block, and      1,088.00
           float vessel on a 150 Marine Travelift.
           NOTE: does not include divers or specialized
           blocking if needed.  Completion of a critical
           lift plan is required if there are no
           markings or information on sling locations.
                ********* QUOTE 515868 *********

101C       PRESSURE WASH VESSELS BOTTOM  Pressure wash         623.00
           vessel's bottom to remove marine growth.
           NOTE: Does not include hand scraping, if
           needed.
                ********* QUOTE 515868 *********

999.101CDU Duty on materials used on 101C.                      3.00
           Duty & Stamp Tax FROM 07/13/22 TO 07/13/22


TUG        TUG SERVICE Tug service and line handlers           250.00
           required for shifting vessel to dry dock.
                ********* QUOTE 515868 *********

999.301    SHAFT  Crop and renew seized and corroded         2,610.00
           coupling bolts. Remove existing shaft,
           coupling and coupling locking device.  Remove
           and reinstall the shaft packing material.
           Blue fit existing coupling to new shaft.
           Install new shaft and existing coupling and
           coupling bolts. Clean packing gland.  NOTE: The
           quoted price assumes that the packing
           material is 1/2" packing material. The quoted
           price does not include the removal of the
           rudder.  A separate quote will be written to
           remove the rudder.  The quoted price does not
           include repair or renewal of any additional
           or unserviceable components heat or cutting
           of frozen or seized components or fasteners.
           Does not include the lapping of the coupling
           to shaft if needed.
                ********* QUOTE 515868 *********

999.301DUT Duty on materials used on 999.301.                   1.70
           Duty & Stamp Tax FROM 02/23/23 TO 02/23/23
```



Page: 2

| 999.301A | SUPPLY SHAFT AND COUPLING  Supply New AQ17 Double Tapered 4" x 213.125" OAL Shaft complete with hardware.  Two (2) week lead time FOB to Fort Lauderdale.  New tapered coupling with 4" bore and hardware. Approximately ten (10) weeks lead time to Fort Lauderdale. Allow 7-10 days for fitment of shaft coupling and propeller before crating and shipping to Freeport. A 50% deposit is required for order processing.<br>********* QUOTE 515868 ********* | 19,489.00 |

| 999.301ADU | Duty on materials used on 999.301A.<br>Duty & Stamp Tax FROM 01/05/23 TO 01/05/23 | 30.25 |

| 999.302 | RUDDER  Remove the rudder blade to allow for shaft removal, separate from bolted flange. Crop sand shoe to allow for removal.  Inspect all rudder components and report findings. Re-install rudder blade, fasten to upper flange, refit and weld sandshoe to original position.  NOTE: This does not include renewal of rudder tube and sandshoe bearings.<br>********* QUOTE 515868 ********* | 2,360.00 |

| 999.302DUT | Duty on materials used on 999.302.<br>Duty & Stamp Tax FROM 02/23/23 TO 02/23/23 | 35.44 |

| 999.303 | PROPELLER  Install new propeller and propeller nut.  Blue fit check propeller to new shaft. Report findings.  NOTE: The quoted price does not include the lapping of the propeller to shaft if needed.  A separate will be written if needed after blue fit check results.<br>********* QUOTE 515868 ********* | 910.00 |

| 999.303DUT | Duty on materials used on 999.303.<br>Duty & Stamp Tax FROM 02/22/23 TO 02/22/23 | 7.10 |

| 999.303A | SUPPLY PROPELLER  Supply one (1) used Bronze 60D X 57P X 4 blade RH with a 5" bore and a 5" to 4" bronze bore reducer.  Shipping and clearance included in this quote.  Two (2) week lead time FOB to Fort Lauderdale.  A 50% deposit is required for order processing.<br>********* QUOTE 515868 ********* | 17,264.00 |

| 999.303ADU | Duty on materials used on 999.303A.<br>Duty & Stamp Tax FROM 02/27/23 TO 02/27/23 | 1,278.45 |

| 999.304AA | ANODES: REVISED Crop, unbolt and renew twenty-four (24) Pcs of zinc anodes of the vessel's underwater hull, leaving tabs in way of previously installed. Owner supplied (6) each bolt- on M-12 Anodes (12) each weld-on M-12 (4) Each M-24 Weld-on anodes.  NOTE: This quote does not include gas-free services of the fuel tanks in way of the anodes renewal if required. Touch up the (UWH) upon completion of welding.<br>********* QUOTE 515868 ********* | 1,970.00 |

| 999.304AAD | Duty on materials used on 999.304AA.<br>Duty & Stamp Tax FROM 05/11/23 TO 05/11/23 | 7.00 |



Page: 3

| | | |
|---|---|---|
| 999.401 | KEEL COOLERS RESEALING: Crop protective grate tabs to allow access for cooler removals. Remove main engine keel cooler and keel cooler piping components on Port and Starboard. Provide fork lift assistance transport keel cooler to and from weld shop, pressure test keel cooler and report findings. Prep and clean area, re-install coolers using marine sealant and existing piping components. NOTE: Any weld repairs needed to cooler(s) will be additional and billed on Time and Material; any weld repairs to the coolers is to be considered temporary. This does not include any marine coatings of needed at site of install. This does not include refill of marine coolant, vessel's engineer to provide. ********* QUOTE 515868 ********* | 3,900.00 |
| 999.401DUT | Duty on materials used on 999.401. Duty & Stamp Tax FROM 05/24/23 TO 05/24/23 | 32.00 |
| 999.500 | (RL) Bilge Pumpout: Pump out vessel bilge to allow for shaft removal and installation. ********* QUOTE 515868 ********* | 749.00 |
| 999.601A | CLEANING ENGINE ROOM VOID SPACES: Pump out and Pressure clean and degrease engine room and void spaces, to allow for mechanical inspection and repairs. NOTE: Quote does not included protection material or labor to install if necessary to prevent damages to vessel. Quote does not include the preservation of bare metal or fiberglass surfaces or any coatings that may be required. Quote is based off an approximate number of gallons disposal, any additional will be charged separate to this quote. Ventilation is setup as needed. ********* QUOTE 515868 ********* | 2,264.00 |
| 999.603 | (RL) FIBERGALSS REPAIR: Prep and repair various locations of fiberglass damages believed to be leak locations as inspected. Apply spot prime and paint to hull upon completion. Check for leak upon float. ********* QUOTE 515868 ********* | 996.00 |
| 999.603DUT | Duty on materials used on 999.603. Duty & Stamp Tax FROM 06/12/23 TO 06/12/23 | 24.30 |
| FUEL | SUPPLY DUTY PAID FUEL: Supply 365 gallons of Ultra Low Sulfur (ULS) Diesel to vessel. NOTE: Fuel prices are subject to market pricing and may be changed based on updated pricing from the time quoted to the time delivered. Payment for fuel is due on day of receipt; payment by wire transfer only. Payment by credit card will be subject to a 3% processing fee. ********* QUOTE 515868 ********* | 2,595.00 |



Page: 4

| | | |
|---|---|---|
| FUEL1 | SUPPLY DUTY PAID FUEL: Supply 605 gallons of Ultra Low Sulfur (ULS) Diesel to vessel. NOTE: Fuel prices are subject to market pricing and may be changed based on updated pricing from the time quoted to the time delivered.  Payment for fuel is due on day of receipt; payment by wire transfer only. Payment by credit card will be subject to a 3% processing fee.<br>          ********* QUOTE 515868 ********* | 3,375.00 |
| D | DOCKAGE Dockage alongside or hauled-out.<br> DAILY DOCKAGE FROM 07/11/22 TO 07/15/22<br> DAILY DOCKAGE FROM 06/01/23 TO 06/22/23 | 2,295.00 |
| DS-2 | DOCKSIDE SERVICE Dockside Service including 250 gallons of water per day, ISPS Security, garbage removal, and access to wireless internet.  Additional water will be charged at $10.00 per ton.<br> DOCKSIDE SERV. 50-89 FROM 07/11/22 TO 07/15/22<br> DOCKSIDE SERVICE FROM 06/01/23 TO 06/22/23 | 810.00 |
| FHFEE | FREEPORT HARBOUR MASTER FEE: . Freeport Harbour User Fee, Harbor Master Fee, and Environmental Fee:  This is a fee levied by Freeport Harbor Company, and includes one (1) round trip entry and exit.  Does not include pilotage, if required.<br> FPO HARBOUR USAGE FE FROM 07/11/22 TO 07/11/22<br> HARBOUR MASTER FEES FROM 07/11/22 TO 07/11/22<br> ENVIRONMENTAL CHARGE FROM 07/11/22 TO 07/11/22 | 152.12 |
| LTS | LONG TERM DRY STORAGE up to 49' Long term dry storage, per month.  NOTE: Refer to Note in item D.<br> LONG TERM STORAGE FROM 07/13/22 TO 07/31/22<br> LONG TERM STORAGE FROM 08/01/22 TO 08/31/22<br> LONG TERM STORAGE FROM 09/01/22 TO 09/30/22<br> LONG TERM STORAGE FROM 10/01/22 TO 10/31/22<br> LONG TERM STORAGE FROM 11/01/22 TO 11/30/22<br> LONG TERM STORAGE FROM 12/01/22 TO 12/31/22<br> LONG TERM STORAGE FROM 01/01/23 TO 01/31/23<br> LONG TERM STORAGE FROM 02/01/23 TO 02/28/23<br> LONG TERM STORAGE FROM 03/01/23 TO 03/31/23<br> LONG TERM STORAGE FROM 04/04/23 TO 04/30/23<br> LONG TERM STORAGE FROM 05/01/23 TO 05/31/23 | 10,010.90 |



Page: 5

```
LTDS        LONG TERM DOCKSIDE SERVICE Long term dockside        5,678.27
            service includes Certified ISPS Security,
            daily water, garbage disposal, and access to
            wireless internet.  Note: Refer to Note in
            item D.
             LTDS FROM 07/13/22 TO 07/31/22
             LTDS FROM 08/01/22 TO 08/31/22
             LTDS FROM 09/01/22 TO 09/30/22
             LTDS FROM 10/01/22 TO 10/31/22
             LTDS FROM 11/01/22 TO 11/30/22
             LTDS FROM 12/01/22 TO 12/31/22
             LTDS FROM 01/01/23 TO 01/31/23
             LTDS FROM 02/01/23 TO 02/28/23
             LTDS FROM 03/01/23 TO 03/31/23
             LTDS FROM 04/01/23 TO 04/30/23
             LTDS FROM 05/01/23 TO 05/31/23


                                                  --------------
                        SUB TOTAL                      80,477.29
                        DUTY                            1,419.24
                        SHIP REPAIRS LIABILITY            818.96
                        VAT                             7,481.08
                                                  --------------
                        Current Billing                90,196.57
                                                  ==============
                        Payment rec'd 09/30/22        (40,000.00)
                        Credit on Storage 04/26/23     (2,984.00)
                        Payment rec'd 05/02/23        (10,000.00)
                        Payment rec'd 05/17/23         (5,000.00)
                        Payment rec'd 05/24/23        (10,000.00)
                        Payment rec'd 06/02/23         (5,000.00)
                                                  --------------
                        Total Amount Due               17,212.57
                  End of Invoice
```

I agree with the charges to date as shown.

_____       Date: _____
Owner, Captain, or Authorized Representative

**Bradford Grand Bahama, Ltd.** | Queens Highway | Freeport, Bahamas
**Bahamas** 242.352.7711 | **Service** 954.791.3800 | **Sales** 954.377.3900 | Bradford-Marine.com
TIN# 100177442
VAT INVOICE

# Exhibit D

## ALL ISLAND MARINE SERVICES LLC

PO Box 954

Cape Canaveral, FL 32920

Capt. Fred 321-536-4855



3/23/22

Ken@ bahamagroup.com

Dear Ken

Thank you for contacting us regarding a fiberglass vessel for your lobstering operation in the Bahamas.

I have taken into consideration your requirements in a vessel, I feel that the following vessel and proposal may be your best option. The vessel is called Lady Renee it is a 45 ft. Fiberglass Trawler. The main engines are (2) 3208 Cats., it is very low fuel consumption.

The price of this vessel is $65,000.00 as she sits in Alabama. This amount will need to be paid before any of the retrofitting will be done.

| | |
|---|---|
| | $65,000.00 |
| Deposit paid | $ 6500.00 |
| Balance of | $58,500.00 |

I can also have the following completed after your purchase of the vessel.

| | | |
|---|---|---|
| 1. | New Freezers installed in fish hold. | $9,000.00 |
| 2. | Single Side band radio, autopilot, & GPS installed. | $ 2,500.00 |
| 3. | Clean and repaint deck house and outer deck. | $ 1,500.00 |
| 4. | Haul vessel. Scrape, pressure wash and paint bottom with Anti-fouling paint, replace zincs where needed. Check Shaft, Prop & Rudder. Repair any needed damage area to hull. | $5,000.00 |
| 5. | Deliver vessel to Nassau, Bahamas (Alabama to Nassau) | $5,000.00 |
| 6. | Purchase Generator | $4,000.00 |
| 7. | Unknown and miscellaneous items that will crop up. | $4,000.00 |

The total for the above would be right at      Total for Retrofit      $32,000.00

NOTE: The above numbers are our best guestimate.

We will do payments in 3 scheduled payments.

1. $15,000.00 Prior to commencement of work.
2. $12,000.00 Upon purchasing equipment.
3. $5,000.00 Upon completion of work.

Total Retrofit        $32,000.00

I feel we can complete this project in 30-45 days.

It is our pleasure to do this work for you.

Sincerely,

Capt. Fred Gatchell

# Exhibit E

## ALL ISLAND MARINE SERVICES LLC

PO Box 954

Cape Canaveral, FL 32920

Capt. Fred 321-536-4855



3/23/22

Ken@ bahamagroup.com

Dear Ken

   Thank you for contacting us regarding a fiberglass vessel for your lobstering operation in the Bahamas.

   I have taken into consideration your requirements in a vessel, I feel that the following vessel and proposal may be your best option. The vessel is called Happy Snapper it is a 45 ft. Fiberglass  Trawler. The main engines are (2) 671's, it is very low fuel consumption and was rebuilt 2 years ago.

   The price of this vessel is  $48,000.00 as she sits in Alabama. This amount will need to be paid before any of the retrofitting will be done.                         $48,000.00

|  |  |
|---|---|
| Deposit paid | $ 4500.00 |
| Balance of | $43,500.00 |

   I can also have the following completed after your purchase of the vessel.

| | | |
|---|---|---|
| 1. | New Freezers installed in fish hold. | $9,000.00 |
| 2. | Single Side band radio, autopilot, & GPS installed. | $ 2,500.00 |
| 3. | Clean and repaint deck house and outer deck. | $ 1,500.00 |
| 4. | Haul vessel. Scrape, pressure wash and paint bottom with Anti-fouling paint, replace zincs where needed. Check Shaft, Prop & Rudder. Repair any needed damage area to hull. | $5,000.00 |
| 5. | Deliver vessel to Nassau, Bahamas (Alabama to Nassau) | $6,000.00 |
| 6. | Purchase Generator | $4,000.00 |
| 7. | Unknown and miscellaneous items that will crop up. | $4,000.00 |

The total for the above would be right at          Total for Retrofit          $33,000.00

NOTE: The above numbers are our best guestimate.

We will do payments in 3 scheduled payments.

1. $15,000.00 Prior to commencement of work.
2. $12,000.00 Upon purchasing equipment.
3. $6,000.00 Upon completion of work.          Total Retrofit          $33,000.00

I feel we can complete this project in 30-45 days.

It is our pleasure to do this work for you.

Sincerely,

Capt. Fred Gatchell

# Exhibit F

- $20,000.00    Processed

All Island Marine Service LLC

Nov 03

- $25,000.00    Processed

All Island Marine Service LLC

Oct 20



| All Island Marine Service LLC | - $15,000.00 | > |
|---|---|---|
| Dec 22 | Processed | |

| All Island Marine Service LLC | - $15,000.00 | > |
|---|---|---|
| Dec 12 | Processed | |

| All Island Marine Service LLC | - $19,000.00 | > |
|---|---|---|
| Nov 14 | Processed | |

| All Island Marine Service LLC | - $10,000.00 | > |
|---|---|---|
| Aug 12 | Processed | |

| All Island Marine Service LLC | - $20,000.00 | > |
|---|---|---|
| Jun 08 | Processed | |

| All Island Marine Service LLC | - $50,000.00 | > |
|---|---|---|
| Apr 25 | Processed | |

All Island Marine Service LLC

Apr 05

- $10,000.00

Processed

›

---

All Island Marine Service LLC

Mar 16

- $11,000.00

Processed

›

---

All Island Marine Service LLC

Feb 15

- $25,000.00

Processed

›

---

All Island Marine Service LLC

Jan 21

- $20,000.00

Processed

›

---

All Island Marine Service LLC

Jan 14

- $80,000.00

Processed

›

---

All Island Marine Service LLC

Jun 14

- $15,000.00

Processed

›

---

All Island Marine Service LLC

Nov 30

- $15,500.00

Processed

›

18,906.71.pdf



### Reference

Transaction reference number
**NB2945137886**

Telegraphic transfer reference number
**HK129112BI545639**

### Pay to

Beneficiary bank location
**UNITED STATES**

Beneficiary account number / IBAN
**1216858377**

Payment currency
**USD**

Beneficiary name
**ALL ISLAND MARINE SERVICE LLC**

Beneficiary bank name
**PNC BANK NATIONAL ASSOCIATION**

Beneficiary address
**602 GLEN CHEEK DRIVE
PORT CANAVERAL FLORIDA,
32920 USA**

Beneficiary bank address
**222 DELAWARE AVEWILMINGTON DE 19899
USWILMINGTONDELAWARE**

Beneficiary bank code/ SWIFT address
**PNCCUS33XXX**

### From

**USD Savings**
652-849282-838  -  Business Integrated USD Savings

### Amount

Payment amount
USD **18,906.71**

Other fees and charges may apply. For details, please refer to:the Bank's Commercial Tariff section available on the HSBC Hong Kong Commercial Banking website.Please go to 'Transaction History' under 'Accounts' on or after the 'Payment Date' to check the transaction details.

### Settlement option

**Telegraphic transfer**
If we are unable to process this payment via RTGS, we will process it as a telegraphic transfer and the corresponding charges will apply. However, the related advice will still show 'Bank Fund Transfer' and not 'Outward Remittance'.

### Payment date

**Today, Tuesday 29 Nov 2022**
Transaction requests submitted during business hours on a Hong Kong working day will be processed on the same day. Requests submitted at other times (e.g. on a public holiday) will be processed on the next working day.

### Who pays local / overseas charges

**We pay local bank charges, the beneficiary pays overseas bank charges.**

### Deduct charges from

**Same as debit account**

### Messages

Message to beneficiary

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**
CASE NO. 6:23-cv-00759-PGB-LHP

OUR ANDROS FISHERIES LTD.

    Plaintiff,

v.

ALL ISLAND MARINE SERVICES, LLC
and FREDERICK GATCHELL

    Defendants.

_____/


**<u>DECLARATION OF SHAWN SMITH</u>**

    SHAWN SMITH declares and says that:

    1.    My name is Shawn Smith, a resident of Nassau, Bahamas and of legal age.

    2.    I am a certified public accountant licensed to practice as such in the Bahamas as of 2007. I was hired by Our Andros Fisheries LTD ("Our Andros" or the "Company") as the Company's outside accountant from the inception of the Company. In that position, the scope of my services to Our Andros was to oversee the accounting, prepare financial statements, profit and loss statement, the Company's general ledger as well as the prepare the Company's financial reporting and tax filings with the Bahamian government

    3.    In addition, the scope of my services for the Company also included preparing financial projections relating to the Company's anticipated purchase of fishing vessels to use in the Company's lobstering operation.

Decl. of Shawn Smith
Case No. 6:23-cv-00759-PGB-LHP

4.    In the context of the above, I make this declaration on personal knowledge and do so in support of Our Andros' Motion for Entry of Default Final Judgment against All Island Marine Services, LLC ("AIMS")  in the cases styled *Our Andros Fisheries LTD v. All Island Marine Services, LLC and Fredrick Gatchell*, No. 6:23-cv-00759-PGB-LHP in and for the Middle District of Florida.

5.    In between the date I was first hired as the Company's accountant and the date of this declaration, I have performed the following services for the Company:

      a.  Compile Records

      b.  Tax Reporting

      c.  Projections

      d.  Purchase & Operational Budgets

      e.  Repair & Maintenance Cost

6.    In or about November 2021, I was asked to provide operational profit projections regarding the Company's plans to purchase three (3) fishing vessels for the Company's lobstering business.  I provided such financial projections to the Company using the costs associated with the maintenance and  operation of these vessels provided to me by the Company. The scope and capacity of the three (3) fishing vessels that the Company was planning to purchase and upon which I based my profit projections were similar to the three (3) vessels that Andros contracted to purchase from AIMS between Janaury and March 2022.  Specifically the three vessels Andros contracted to purchase from AIMS were the Mary Elisabeth, the Lady Renee and the Happy Snapper.

7.    The financial projections for the profits that the Company was to earn during the 2022 Bahamian lobstering season was $930,000.00 or approximately $310,000.00

per vessel, assuming that the vessels arrived and were ready for use by August 1, 2022, which is the start of the lobster season.

8.  The Company set out to purchase three fishing vessels to arrive in the Bahamas in time to commence operation by the August 2022 lobster season and did so by entering into three (3) contracts with AIMS between January and March 2022. These three ships were all scheduled to arrive in the Bahamas before the August 1, 2022 start of the Bahamian lobster season.

9.  None of the three ships that the Company purchased were delivered in working order to the Company for use in 2022 Bahamian Lobster season. Two of the ships were never delivered at all and one was delivered in damaged condition and unable to be repaired in time for use during the lobster season. The damaged vessel has only just recently completed repairs at an out-of-pocket cost to the Company of $123,53771

10.  Though those three ships purchased through AIMS were not available for the Company to use during the 2022 lobster season, in or about 2021, the Company secured another vessel that was used for its lobstering operation in 2022. That vessel was the Our Andros 1. This vessel is similar in ability and capacity as the three vessels that the Company purchased from AIMS. After deducting all expenses, the Company was able to make a profit of $347,258.00 on the Our Andros 1 vessel during the 2022 lobster season.

11.  Based on the projections that I made on behalf of the Company, together with the profits that the Company made on its one working vessel, the Company sustained lost profits of $930,000.00, which amounts to $310,000.00 for each of the three ships that the Company did not have during the 2022 Bahamian lobster season.

Decl. of Shawn Smith
Case No. 6:23-cv-00759-PGB-LHP

## **DECLARATION PURSUANT TO 28 U.S.C. § 1746**

    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.  Executed this <u>30th</u> day of June, 2023.

Shawn Smith